### WILSON *v.* NEW YORK CENT. & H. R. R. CO.

*(Supreme Court, General Term, Fifth Department.   January, 1886.)*

1. RAILROAD COMPANIES—TEMPORARY OBSTRUCTION OF STREET—ABUTTING OWNERS.

    Laws N. Y. 1880, c. 147, authorized defendant to construct an elevated road through the city of Rochester, and provided for the appointment of commissioners with power to make alterations in the width or grade of streets crossed by such road, or to discontinue portions thereof. An agreement was entered into by the commissioners on behalf of the city and defendant whereby the latter was made liable to the city for any damages to which it might be subjected, by such improvement, to any person injured thereby. The charter of the city authorized it to change the grade of its streets, but made no provision for the payment of damages to persons whose property was damaged thereby. *Held*, that an action against defendant by an adjacent property owner for damages arising from the change of grade, and the temporary closing of a street during the improvement, could not be maintained, his land not being actually taken, and no want of care or skill in performing the work being shown.[2]

2. CONSTITUTIONAL LAW—TITLES OF LAWS—UNITY OF TITLE.

    The subject of an act entitled "An act to provide for the relief of the city of Rochester, and the New York Central & Hudson River Railroad Company in said city," the provisions of which relate to the elevation of the company's tracks and the closing, widening, and changing the grade of streets when necessary to secure that object, and to the payment of costs and expenses thereof, is single, and sufficiently expressed in the title thereof, within the requirement of the constitution that no private or local bill shall embrace more than one subject, which shall be expressed in the title.

Appeal from judgment on report of referee.

Action by John H. Wilson against the New York Central & Hudson River Railroad Company for damages for lowering the grade of, and temporarily obstructing, a street adjacent to plaintiff's lot in the city of Rochester. The report of the referee was in favor of defendant. Plaintiff appealed.

---

[1] This case was decided before the publication of the New York Supplement was commenced, and is here published to explain the opinion in Egerer v. Railroad Co., *post*, 69.

[2] Respecting the rights of abutting owners where a railroad company lays its tracks in the streets, see Jewett v. Railroad Co., 1 N. Y. Supp. 123, and note; Railroad Co. v. Bourne, (Colo.) 16 Pac. Rep. 839, and note; Rude v. City of St. Louis, (Mo.) 6 S. W. Rep. 257, and note; Pratt v. Railroad Co., (Iowa,) 33 N. W. Rep. 666, and note.

Argued before SMITH, P. J., and BARKER, HAIGHT, and BRADLEY, JJ.
*William J. Sheridan,* for appellant.   *Edward Harris,* for respondent.

BARKER, J.   The plaintiff is the half owner and in the sole possession of a
lot situated in the city of Rochester, 40 feet in width; one front being on the
east side of King street, and the other being on the west side of Litchfield
street, the streets running parallel with each other.   Prior to the alleged
wrongful acts of the defendant, its tracks, running east and west through the
city, crossed both of these streets at grade; the plaintiff's lot being located on
the south side of the road-bed, and adjacent thereto.   The plaintiff's premises
were used as a coal-yard, being fitted up with the usual conveniences for that
business; the main entrance being on King street.   Many other streets in the
same part of the city were also crossed by the defendant's tracks at grade, and
had been so used for many years.   In 1880 (chapter 147) the legislature cre-
ated a commission consisting of 14 persons, all residents of the city of Roch-
ester, to act for and in behalf of the city; and they were empowered to agree
with the defendant for a change of all or any part of its railroad within the
city limits, and to determine the manner and means by which any portion of
its tracks should be carried over or under any or all of the streets in the city,
and the extent to which the defendant might use or occupy any part or portion
of the streets for the crossings of the defendant's road in, under, or over the
same.   The commissioners were also empowered to make, or cause to be made,
any such alterations in the width or grade of a street, lane, or alley in said
city, where the same is crossed or intersected by said railroad, as said com-
missioners should deem proper or necessary to effect the purposes of the act,
and to determine the manner and means by which said streets, lanes, or al-
leys, or any them, shall be carried over, under, or across the said railroad; to
discontinue and close up that part or portion of any street, lane, or alley in
said city where the same, or any of them, cross or intersect said railroad, on
such terms and conditions, with reference to public convenience, as to the
commissioners should seem just and proper; to employ a competent person to
inspect the performance of such work in their behalf at the expense of the city.
Thereafter, maps, plans, and specifications were prepared for overhead cross-
ings over some 20 streets, elevating the tracks above the then grade.   At the
King-Street crossing the tracks were to be elevated four and one-half feet, and
the grade of the road lowered six feet.   Litchfield street was to be filled by an
embankment, and discontinued at the point of intersection.   The plan pro-
posed was adopted, and the commissioners and the railroad company entered
into a contract in writing by the terms of which it was mutually agreed that
a change should be made in the grade of the main line of the defendant's road
in accordance with the maps, plans, and specifications, and the same were re-
ferred to as constituting a part of the contract; and that between certain points
mentioned, which included more than 20 streets then crossed by the defend-
ant's tracks, there should be no crossing thereafter at grade.   The agreement
then stipulated how much the track should be elevated above the existing
grade at each crossing, and naming the streets which should be discontinued
and filled by embankment at the place of intersection.   When necessary, the
grade of the street was to be lowered, so that the railroad tracks would be at
least 12 feet above the grade of the street.   While the work of lowering King
street, and elevating the tracks, was being done, a section of that street was
fenced in, and traffic thereon suspended for several months, and access to the
plaintiff's lot was thus prevented, and his business interrupted.   The street
and the sidewalk in front of the plaintiff's lot were lowered six feet.   For the
damages thus occurring to the plaintiff, and for those caused by the filling in
and closing up of Litchfield street, this action is prosecuted.   The evidence
tended to show that by lowering the grade of King street, and discontinuing
a section of Litchfield street, the market value of the plaintiff's lot was di-

minished, and that he also suffered a loss in consequence of the interruption of his business.    The agents and servants of the defendant did and performed all the work in making the changes and improvements, under the direction and superintendence of the engineer employed by the city.    The purpose of the act was to secure an elevation of the defendant's tracks over the streets in the business part of the city, and thus protect the public from the danger of collision with the defendant's cars and engines, and to facilitate traffic on the intersecting streets.    That many advantages would accrue to the railroad company in making a change is equally manifest, and was doubtless contemplated by the legislature as well as by the defendant.

The act specially provided that all the expenses incident to carrying out the scheme of improvement should be incurred and paid by the company, except the pay of the engineer employed by the city to superintend the work; and the city was to be indemnified against all costs and expenses arising from the necessary widening or lowering the grade of any street or streets crossed by the tracks of the defendant.    The provision of the act upon this subject is found in the third section, and is as follows: "Nothing in this act contained shall be deemed to authorize the commissioners to subject the said city to the payment of any portion of the cost of the work to be done under the agreement for the change, or under any of the provisions of the act; and if, by reason of the said work, or anything done pursuant to the act, the city shall be subjected to the payment of any damages or costs to any person or persons, corporation or corporations, the railroad company shall be liable therefor to the city."    This provision, without any further promise or undertaking on the part of the company, constituted a full and complete indemnity to the city in case the provisions of the act providing for the elevating of the tracks was carried into execution.    In the written agreement the company specifically agreed to do and perform all the necessary work of lowering the grade of the street under the direction of the proper city authorities, and to leave the roadway and sidewalks in as good condition as they were before the change was made.    It also promises to prosecute the work so as to avoid all unnecessary obstruction of the streets; and the commissioners agreed, in behalf of the city, to extend all reasonable facilities and privileges in aid of a rapid completion of the work.    No part of the plaintiff's lands were taken by the railroad or the city in making any of the improvements and changes on King and Litchfield streets; so he has no legal claim against either based upon the appropriation of any of his property for the use of either corporation.    The plaintiff's claim for damages is therefore limited to those which he may have sustained from the lowering of the grade of King street, and the obstruction of traffic while the same was being done.

The single question is therefore presented whether the lowering of the grade of King street was, in a legal sense, in view of the provisions of the act and of the contract, the act and determination of the city; or was it the independent act of the defendant, done and performed for its own convenience?    If the former, then changing the grade of the street was an authorized act on the part of the city, and the plaintiff's damages are *damnum absque injuria.*    Our conclusion is that the alterations and changes made in the streets for the purpose of facilitating the elevation of the defendant's tracks may be regarded as the authorized act on the part of the city, done with the consent and under the direction of its proper officers.    The commissioners determined the changes which were to be made, and not the railroad company; the latter consenting to reconstruct its tracks in view of the proposed change, and in the manner provided in the contract, and thus securing to the public the benefit and advantages of overhead crossings.    The agreement by the defendant to indemnify the city in case expenses were incurred by widening or lowering the grade of the street did not make the same the act of the company.    There is nothing in the act or in the contract conferring upon the company the right

or permission to change the grade or fill up any portion of the streets, nor do the public acquire any additional easement in either of the streets in front of the plaintiff's property.   It is well settled, and no longer admits of any doubt or discussion, that where a municipal corporation, under a rightful authority contained in its charter, grades or elevates a street, an action will not lie, by an adjoining owner whose lands are not actually taken, for consequential damages to his premises, there being no want of care and skill in the execution of the work, and no provision is made in the charter for the payment of damages of that character.   *Radcliff's Ex'rs* v. *Mayor*, 4 N. Y. 195; *Coster* v. *Mayor*, 43 N. Y. 399.   We are unable to find any provision in the charter allowing abutters damages for injury to their property consequent upon change of grade in front of their premises, nor was it suggested on the argument that any such provision existed.

The act of the city, in closing up Litchfield street at the intersection, involves the same legal question, and no other.   If the plaintiff has sustained any damages by reason of the action of the city authorities, they were consequential in their nature, and too remote to be the foundation of an action. The law presumes that the owner received proper indemnity and compensation from the public when the street was originally laid out or dedicated to the public use.   The inconvenience suffered by the plaintiff is experienced by him in common with all the other members of the community.   *Coster* v. *Mayor*, *supra; Smith* v. *Boston*, 7 Cush. 254.   No complaint is made that the closing of King street by the temporary fence was unnecessary while the grade of the street was being lowered, or that it was continued for an unnecessary length of time.   The referee was not asked to pass upon these questions, and there is no evidence tending to show that it was not a proper precaution to be observed with a view of protecting the public.   It was doubtless technical trespass to nail the boards on the fence to the plaintiff's office, which stood upon his lot, but the action was not brought to recover those damages, nor was the claim for damages placed upon that ground.

It is objected that the law under which the defendant justifies its action is unconstitutional, and repugnant to the provision that no private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title.   The act is entitled "An act to provide for the relief of the city of Rochester, and the New York Central & Hudson River Railroad Company in said city."   All the provisions in the act relate to the elevation of the defendant's tracks above the grades of the streets in that city, and to the closing and widening and changing the grade of the same when necessary to secure that object, and to the manner of paying the costs and expenses of the same.   This constitutes a single subject.   All these provisions are for the relief of the two corporations named in the act; and are limited to the benefits to be derived by the public, and those corporations, within the corporate limits of the city of Rochester.   The whole scheme of the act is to accomplish one result.   So far as these corporations derived any power from the act to contract with each other, it is limited to the same object and purpose.   The subject of legislation is sufficiently expressed so as to escape the criticism made by the appellant.   The power directly conferred by the act is bestowed on the city of Rochester, and limited to such matters and subjects as are generally given to municipal corporations in this state.   In effect, it is nothing more than an amendment of the city charter.   Where a legislative enactment in substance and effect relates to the powers, duties, obligations, and interests of an existing municipal corporation, and is limited to such matters, then the subject is frequently expressed in a title which states the enactment is for the relief of such municipality, without mention of the particular things which it is authorized to do and perform.   It was held in one case, where the title read, namely, "An act to amend the several acts in relation to the city of Rochester," that the words expressed a subject which

was comprehensive enough to embrace all the details of the city charter and government. *People* v. *Briggs*, 50 N. Y. 553. In another case the title adopted was in these words: "An act for the relief of James Ley & Son;" and it was held to be a sufficient statement of the subject embraced in the body of the act, which authorized the levy of a tax by a municipal corporation to pay the persons named in title a sum of money in addition to the contract price stipulated to be paid to them by the city for work and labor. *Brewster* v. *City of Syracuse*, 19 N. Y. 116. In that case the action was by a tax-payer to restrain proceedings on the part of the common council to carry out the terms of the act. The municipality, by its charter, was prohibited from paying any compensation above the contract price, and could do so only by virtue of the act, the constitutionality of which was brought in question by the tax-payer, and it was held that the law was in compliance with the requirements of the constitution. See, also, the opinion of the court of appeals in *Re Mayor*, etc., and reported in 2 N. E. Rep. 642.

By applying to the plaintiff's case well-settled rules of law, we are required to hold that he failed to make out a case for relief by an award of damages for the injuries which he has suffered by the action of the board of commissioners in the management of matters committed to their judgment and supervision by competent authority. Judgment affirmed, with costs.

All concur.