# MORRIS ET AL. *v.* CITY OF INDIANAPOLIS ET AL.

[No. 21,503. Filed April 7, 1911. Rehearing denied April 23, 1912.]

1. RAILROADS.—*Abolishing Grade Crossings.—Appeal.*—In a proceeding under the track elevation statute, §§8864-8872 Burns 1908, Acts 1905 p. 144, providing for the alteration of steam railroad crossings and to secure the depression or elevation of steam railroad tracks, the right of appeal by one aggrieved by the decision of the board of public works as to the assessment of damages is given by §5 of said act, and not otherwise. p. 376.

2. RAILROADS.—*Abolishing Grade Crossings.—Appeal.—Pleading.—Remonstrance.—Original Complaint.*—In an appeal to the Superior Court under §8868 Burns 1908, §5 Acts 1905 p. 144, from the decision of the board of public works as to the assessment of damages in a track elevation proceeding, the remonstrance filed before such board is a proper pleading, and an original complaint filed in the superior court with such appeal is superfluous and will not be considered. p. 377.

3. RAILROADS.—*Abolishing Grade Crossings.—Alteration of Street Grade.—Nature of Proceedings.*—The necessary alteration, change or elevation of the grades of streets and the depression and elevation of steam railroad tracks under §§8864-8872 Burns 1908, Acts 1905 p. 144, must be regarded wholly as a street improvement and is a part of the police power conferred by the State for promoting the safety of public travel, and is in no sense a railroad construction. p. 382.

4. RAILROADS.—*Abolishing Grade Crossings.—Damages.—"Recoverable Under Existing Laws."*—The provision of the track elevation statute, §8865 Burns 1908, §2 Acts 1905 p. 144, including "damages, if any, recoverable under existing laws," in the designation of what shall be included in the expense to be borne by the parties in interest in the elevation or depression of tracks, does not authorize a recovery of damages on account of such elevation or depression of tracks, but merely directs those aggrieved to seek redress under existing laws, if any there be, the term

"recoverable" meaning that which may be recovered as a matter of legal right. p. 384.

5. MUNICIPAL CORPORATIONS.—*Change of Grade of Public Streets. —Damages.—Liability.*—In the absence of constitutional or statutory provision requiring compensation for property injured, no legal liability arises against a city or town in favor of an abutting property owner for consequential damages on account of the alteration or change of the street grade done as a matter of public necessity pursuant to statutory authority and without negligence or lack of skill. pp. 385, 386.

6. EMINENT DOMAIN.—*Consequential Injury.—"Taking of Private Property."*—Consequential injury to an abutting property owner arising from a work of public necessity and convenience performed within the limits of a street is not within the provision of the constitution prohibiting the taking of private property for public use without compensation therefor being first assessed and tendered. p. 385.

7. MUNICIPAL CORPORATIONS.—*Rights of Abutting Property Owners.—Access.—Subject to Rights of State.*—An abutting property owner has a right of access from his premises to the street, but he cannot demand that the grade of the street should not be changed or altered because it might interfere with his right of access, since such right is private and is held and enjoyed subject to the rights of the State, through the municipality, to improve the street or change its grade when public necessity so demands. p. 388.

8. MUNICIPAL CORPORATIONS.—*Change of Grade of Streets.—Liability.—Statute.*—The provision of §3508 Burns 1894, §3073 R. S. 1881, §27 Acts 1867 p. 33, that the established grade of a street shall not be changed until the damage occasioned by such change shall have been assessed and tendered, so far as it applied to the city of Indianapolis, was repealed by §3772 Burns 1894, Acts 1891 p. 137. p. 390.

9. STATUTES.—*Revision.—Repeal.*—Where a new statute covers the whole subject-matter of an old one, adds new provisions and makes changes, and is intended to be a revision and to take the place of the old, it repeals the old law by implication. p. 392.

10. CONSTITUTIONAL LAW.—*Equal Protection of the Law.*—Where an abutting property owner bases his claim for damages on the change of a street grade in the city of Indianapolis made subsequent to the time when the municipal corporation act of 1905 (Acts 1905 p. 219) went into effect, there is nothing to support his contention that the Indianapolis city charter of 1891 (Acts 1891 p. 137) by repealing §3508 Burns 1894, §27, Acts 1867 p. 33, so far as the same applied to the city of Indianapolis, thereby established for said city a different rule of law than that es-

tablished by said act of 1867 for other cities of the State in violation of the 14th amendment of the federal Constitution, since the act of 1905 applies to all cities of the State and repeals the act of 1867. p. 393.

11. MUNICIPAL CORPORATIONS.—*Change of Grade of Streets.—Liability.—Statute.*—The municipal corporation act (Acts 1905 p. 219) contains no provision making a city liable for damages arising out of the change or alteration of the grade of any street or alley, and leaves in force the common law rule as to such liability. p. 393.

12. CONSTITUTIONAL LAW.—*Compensation for Injury to Property.—Taking Property Without Just Compensation.*—Compensation for property injured or damaged is not required by the Constitution of Indiana (Const. Art. 1, §21), which prohibits only the taking of property without just compensation. p. 394.

13. COURTS.—*Decisions.—Conclusiveness.*—The Supreme Court of Indiana will adhere to and follow its own decisions wherein the rules of the common law are expounded, and is not required to accept and follow the common law as expounded and enforced by the courts of other states. p. 394.

14. CONSTITUTIONAL LAW.—*Police Power.*—The police power of the State not only embraces laws and regulations intended to promote the public health, morals or safety, or to suppress that which is disorderly or unsanitary, but it also embraces and applies to laws and regulations which conduce to the general welfare of the public or state. p. 394.

15. CONSTITUTIONAL LAW.—*Police Power.—Track Elevation Statute.*—The track elevation statute (§§8864-8872 Burns 1908, Acts 1905 p. 144) is within the exercise of the police power of the State. p. 395.

16. RAILROADS.—*Abolishing Grade Crossings.—Change of Street Grade.—Liability.*—No negligence or carelessness being imputed to them, railroad companies in elevating or depressing their tracks on city streets pursuant to an order of the board of public works made under the authority of the act of the legislature (§§8864-8872 Burns 1908, Acts 1905 p. 144) are not liable to abutting property owners for damages from a resulting change of the street grade. p. 395.

17. CONSTITUTIONAL LAW.—*Track Elevation Statute.*—The statute providing for the elevation or depression of steam railroad tracks (§§8864-8872 Burns 1908, Acts 1905 p. 144) is not violative of the 14th amendment to the federal Constitution, nor of the provisions of the state Constitution. p. 396.

From Superior Court of Marion County (76,735); *James M. Leathers,* Judge.

Proceedings by the City of Indianapolis to abolish certain railroad grade crossings. Edward Morris and others remon-. strated against the assessment of damages by the board of public works of said city. From a judgment for said city and the railroad companies, the remonstrants appeal. *Affirmed.*

*Addison C. Harris, John E. Scott* and *Lew Wallace,* for appellants.

*F. E. Matson,* Corporation Counsel, *Elam, Fesler & Elam, F. Winter, Baker & Daniels, S. O. Pickens, C. D. Bowen, J. H. Pierce, Edward B. Raub, Leonard J. Hackney,* and *Frank L. Littleton,* for appellees.

JORDAN, J.—This action arose under an act of the legislature approved and in force on March 3, 1905, and known as the Indianapolis track elevation law (Acts 1905 p. 144, §§8864-8872 Burns 1908). It is entitled "An Act to provide for the alteration of steam railroad grade crossings, and to secure the depression or elevation of steam railroad tracks where the same cross streets or highways in cities of more than one hundred thousand population according to the last preceding United States census, and authorizing the opening, change and vacation of streets and other highways and change of grades thereof in connection therewith; providing for the payment of the cost of such improvement by railroad companies, street railway companies, and the city and county in which such city is located, and incorporated towns lying within and surrounded by the corporate limits of such city." In §9 of said act it is declared that the act shall be supplemental to an act of 1891 (Acts 1891 p. 137), concerning the incorporation and government of cities having more than 100,000 population, etc., and to all acts amendatory and supplemental to the aforesaid act.

By §1 of said act of 1905 (§8864 Burns 1908) it is provided that the board of public works of. any city of more than one hundred thousand population, according to the last

preceding United States census, may, upon a petition therefor, or upon its own initiative, adopt a resolution for the alteration of any grade crossing or crossings of any steam railroad track or tracks, and any highway or highways in said city and the approaches thereto, or for the elevation or depression of the steam railroad track or tracks crossing any highway or highways in said city. It is provided that on the adoption of said resolution the board shall cause notice thereof to be published in some daily newspaper, showing the day on which the board shall receive and hear remonstrances from persons interested in and affected by such improvement, and when it will determine the public necessity and convenience thereof. On the day fixed for hearing, it is provided that the board of public works shall consider remonstrances, if any, and shall take final action in the matter, and shall confirm, modify or rescind its original resolution. Provision is made for service of notice on some resident agent or officer of any steam railroad or street railway whose tracks are affected by such proceeding, and on the county commissioners of the county in which such city is located, and also on the town clerk of any incorporated town lying within or surrounded by the corporate limits of such city.

By §2 of said act (§8865 Burns 1908) it is provided, among other things, that the board of public works, at the hearing provided for, shall determine the relative amount of such improvement equitably to be borne by each railroad company, and that the expense to be borne by all the parties interested shall include any expense which may be incurred by reason of lowering the grade of any street, alley or other highway, and the construction and reconstruction of the pavement of the entire width of the street, including sidewalks, and the alteration and construction of necessary drains required by such separation of grades; and said board is also to determine "the damages, if any, recoverable under existing law by any person, firm or corporation on account of such elevation or depression of tracks, and the

cost of the elevation or depression of the railroad track or tracks, except the cost of the ties, ballast and rails of the railroad track or tracks or street railway tracks and the expense of relaying and reconstructing the same.'' And the expense is to include a certain portion of the compensation of the city civil engineer. It is further provided in said §2 that the steam railroad or railroads, whose tracks are affected, shall pay seventy-five per cent of such total cost. Where such crossing is occupied by the track or tracks of any street railway company, such street railway company shall pay.five per cent of such total cost. Where both street railway tracks and steam railroad tracks occupy said crossing, the city shall pay fourteen per cent, and the county in which said city is located shall pay six per cent of such total cost. Where such steam railroad track or tracks cross any street, avenue or other public way at which there are no street railway tracks, the city shall pay seventeen per cent and the county in which said city is located eight per cent of such total cost. In ascertaining the total cost of separating the highway and steam railroad grades at a crossing, where the highway is occupied by street railroad tracks, of which five per cent may be apportioned as aforesaid to the street railway company, the cost of elevating or depressing the steam railroad tracks shall be taken into account only from the center of such crossing to a distance of 200 feet in each direction.

By §5 of said act (§8868 Burns 1908) it is provided that the board of public works shall provide in such proceeding for the opening, laying out, change or vacation of any street or other public way which may be required by such separation of grades, and the proceedings in relation thereto shall conform, as nearly as possible, to those provided by the law governing cities of such class. It is provided that said board shall likewise determine the damages, if any, which may be recoverable under existing law by any person, firm or corporation on account of such elevation or depression of

tracks; that on the preparation of a list of assessments of damages, said board shall cause a written notice to be served on the owner of each piece of property, showing the amount of such assessment, etc.  In said notice, a date not earlier than ten days after receipt of the notice, or after the last publication, in case of publication, shall be fixed when the board will receive and hear remonstrances from any person or corporation touching the assessment of damages.  On the day of said hearing the board shall consider said assessment and remonstrances, if any, and modify or confirm said assessments, which shall be final and binding, except that any person or corporation thus remonstrating may, within twenty days thereafter, take an appeal to the superior court in the county in which said city is located, and have said assessment, in so far as it affects the person appealing, tried and determined in such court, from the decree of which an appeal may be taken to the Supreme Court or the Appellate Court, as in other cases.

After the taking effect of this act, the board of public works of the city of Indianapolis—that city being within the class containing a population of more than one hundred thousand—initiated proceedings, by resolution, providing for the elevation and depression of steam railroad tracks within said city.  This resolution was, on May 12, 1905, adopted by the board.  It named the several streets of the city, among which was Kentucky avenue, on which the work of improvement in the manner as designated in said resolution was to be done.  A date for hearing remonstrances from any and all persons, firms, corporations, etc., touching the assessment of damages, was fixed by the board.  So far as the record discloses, it appears that all the necessary steps required by the statute were taken.  The damages assessed by the board in favor of appellants were $10.

Subsequently, they, among others, appeared before the board, and filed separately and severally written objections and remonstrances to the award of damages as made by the

board in their favor, and also objected to the authority and jurisdiction of said board of public works, insisting that the board was without jurisdiction to make the assessment, and alleging that the statute under which they were acting was invalid, both under the state and federal Constitutions.

After hearing the evidence presented by appellants in support of their remonstrances, and after having fully considered the assessments made, the board of public works finally, on August 10, 1908, overruled the remonstrances of appellants and others, and in all things confirmed and approved the assessments, to which decision and ruling of the board appellants excepted, and gave notice of an appeal to the Superior Court of Marion County.

An appeal from the decision of the board was finally taken by appellants and others to the Superior Court of Marion County within the time fixed by §5, *supra.*

1. In addition to the appeal, taken as authorized by the latter statute by filing in the superior court, a transcript of the proceedings had before the board of public works, appellants and others appear to have filed in that court an original complaint, which professes to set up the facts in the case and the proceedings had before the board of public works. This latter complaint is said to be based on §102 of the general act of 1905, concerning municipal corporations (Acts 1905 p. 219, §8705 Burns 1908). This section relates to taking appeals from the board of public works of a city in respect to assessments made in certain street improvement proceedings. It provides that an appeal may be taken in such cases by filing an original complaint in the court against the city, and further provides that the judgment of such court shall be final, and no appeal shall lie therefrom. The filing of the original complaint, as appellants assert, was done in order to "make assurance doubly sure."

Their right of appeal to the superior court is given under the provisions of §5, *supra,* of the track elevation statute and

not otherwise.   There was no warrant for filing an
2.   original complaint, as was done, and no regard or
consideration can be given to such complaint in this
appeal.   It is wholly superfluous, and might have been re-
jected by the lower court.   The remonstrance filed before the
board is a proper pleading and to this we give consideration.

The following are, substantially, the facts disclosed by
the remonstrance:   Appellants are the surviving members
of the firm of Nelson Morris & Co.   For many years this
firm has been largely engaged in the production and sale of
meats and their products.   In the year 1892 the firm pur-
chased a part of the east half of square ninety, in the city
of Indianapolis, on which it at once erected a large and
commodious brick storage and sale house, in which the firm
transacted a large business.   The property abuts on Ken-
tucky avenue.   On the south side the premises are connected
by a private switch with the Union Railway system, thereby
making connections with all the railroads entering Indian-
apolis.   At the time its warehouse was built, and contin-
uously thenceforward until the elevation of the tracks in
question, those of the steam railroad of appellees crossed the
avenue at a grade near to and just beyond appellants' prem-
ises, and the street railroad company operated a line along
said avenue.   The grade of this avenue and street had been
established by the city authorities before the railroads were
built into the city, and Kentucky avenue had been maintained
as an improved public street.   It is disclosed in the remon-
strance that in the year 1905, the city, through its board of
public works, began proceedings to elevate the steam rail-
road tracks in the city of Indianapolis; that the tracks in
Kentucky avenue were elevated about nine feet above its
grade, and that the excavation in front of appellants' prem-
ises was about eight or nine feet deep.   It is alleged that by
reason of the central location, easy access of wagons and cars
to the property of appellants was afforded, and it was of
great value for the business for which it was used by them,

and that in carrying out the work in question the use of said property, for the purpose for which it was acquired and kept, was entirely destroyed. The changing of the grade of Kentucky avenue, as aforesaid, has rendered the right of easement of access of reaching said premises by said railway switch of no value. It is also disclosed that access to said building by wagons and persons from Kentucky avenue has been interfered with and impaired, and appellants have been temporarily deprived thereof; all to their damage in the sum of $75,000. The remonstrance then proceeds to allege that the assessment of $10 is grossly inadequate and wholly insufficient to compensate appellants for the loss inflicted on them by reason of the acts of said city; that the change of grade in Kentucky avenue was not for the purpose of improving the convenience for travel, but was caused and done wholly for the use and convenience of the several railroad companies owning and using railroad tracks crossing Kentucky avenue; that the so-called improvement was not an improvement of the grade of the street for the convenience of the traveling public thereon, but was to provide more convenient and secure means for the use of said railroads crossing said Kentucky avenue on their several tracks, etc.

The following appears to be the location of the streets and the railroad tracks in the vicinity of appellants' property, and the changes in said streets and railroad tracks as required to be made under the track elevation resolution by the board of public works of said city: Louisiana street runs east and west. Senate avenue runs north and south, and crosses Louisiana street. Kentucky avenue runs northeast and southwest, crossing Senate avenue one square north of Louisiana street, and crossing Louisiana street one square west of the Senate avenue crossing. Missouri street runs north and south, crossing Louisiana street and Kentucky avenue at their intersection. Appellants' property abuts on the southeast side of Kentucky avenue, about 150 feet north of the north line of Louisiana street, and about 200 feet north

of the north track of the Vandalia Railroad Company, located in Louisiana street. This track is the nearest Vandalia track to appellants' property. Louisiana street is ninety feet wide, and there are six railroad tracks located on its surface, at and for a short distance east of its intersection with Kentucky avenue. The three tracks farthest south belong to the Vandalia Railroad Company. Adjacent to the north side of Louisiana street, between Senate avenue and Kentucky avenue, is a narrow strip of land belonging to the Cincinnati, Indianapolis and Western Railroad Company, on which its track is located. The Cleveland, Cincinnati, Chicago and St. Louis Railway Company owns tracks located on its private right of way, immediately south of appellants' property, extending from Senate avenue substantially at the intersection of that avenue with Louisiana street, on a curve in a northwesterly direction, crossing Kentucky avenue on a bridge about 150 feet northeast of the crossing of Kentucky avenue and Louisiana street. The grade of Kentucky avenue was lowered eight feet at its intersection of Louisiana street and a little less than that in front of appellants' property, and the grade of Louisiana street and the railroad tracks thereon were raised, and said track of the Cincinnati, Indianapolis and Western railroad carried over Kentucky avenue on a bridge. The grade of Louisiana street at the Senate avenue crossing, and the railroad tracks thereon, were raised four and four-tenths feet, and the grade of Senate avenue, in its approaches to Louisiana street, was raised so as to make the crossing at grade.

The resolution adopted by the board declared that public necessity and convenience required the elevation of certain steam railroad tracks. It is further stated therein the manner in which the expense of the improvement was to be apportioned among the different railroad companies. It is provided that an imaginary line be drawn in Louisiana street, midway between the north rail of the north track of the Vandalia railroad and the south rail of the south track

of the Cleveland, Cincinnati, Chicago and St. Louis railway from the west line of West street to the west line of Senate avenue, and so much of the work between the points last mentioned as lies south of said line shall be borne by the Vandalia Railroad Company and so much of said work as lies north of said line shall be borne by the Cleveland, Cincinnati, Chicago and St. Louis Railway Company and the Cincinnati, Indianapolis and Western Railroad Company, and that an imaginary line shall be drawn midway between the north rail of the north track of the Vandalia railroad and the south rail of the south track of the Cleveland, Cincinnati, Chicago and St. Louis railway, in Louisiana street, from the west line of Senate avenue to the west line of Capitol avenue, and so much of the work between the points last mentioned as lies south of the said line shall be borne by the Vandalia Railroad Company, and so much of said work as lies north of said line shall be borne by the Cleveland, Cincinnati, Chicago and St. Louis Railway Company. The resolution further provides that the expense to be borne by all the parties in interest shall include any expense that may be incurred by reason of lowering the grade of any street, alley or other highway, and the construction or reconstruction of the pavement for the entire width of the street, including sidewalks and the alteration or reconstruction of necessary drains required by the separation of grades; also the damages, if any, that may be recoverable under existing law by any person, firm or corporation on account of elevating or depressing said tracks, and the cost thereof. The resolution further provides that the steam railroads therein mentioned, whose tracks are affected, shall pay seventy-five per cent of the total cost of the improvements required by the resolution.

It is further provided that of the expense of all the work to be borne and done by the railroad company, the city of Indianapolis is to pay such company seventeen per cent, and that Marion county shall pay eight per cent of the total

expense of the work to be done by the railroad company between Harding street and West street, including the double-track steel bridge across White river.    (Here is set out the percentage of the total cost to be paid by the city of Indianapolis and Marion county in respect to the cost incurred by the work done in certain streets mentioned.)    It is provided that the Indianapolis Street Railway Company and the Indianapolis Traction and Terminal Company shall pay five per cent of the total cost to the railroad company of that part of the work which, by the terms of the elevated track resolution, the railroad company is to bear for work done between certain points.

Before any demurrers were filed in the lower court, the original complaint and the transcript of the proceedings before the board of public works were consolidated into one case.    Each appellee appeared and filed separate demurrers, assigning among others that the whole case did not state a good cause of action.    This ground was assigned both as to the original complaint and the transcript.    And it was further assigned that the court was without jurisdiction; that the act was in violation of the fourteenth amendment of the federal Constitution, and also of Article 1, §§12, 21, of the Constitution of Indiana.    In appellants' case, the court sustained each and every demurrer, to which appellants excepted, and judgment was rendered against them on the demurrers.    From this judgment they have appealed, and base their assignment of errors on the ruling of the court on the demurrers.

In the appeal of *State, ex rel.,* v. *Indianapolis Union R. Co.* (1903), 160 Ind. 45, 66 N. E. 163, 60 L. R. A. 831, this court held that the city of Indianapolis, under its governing statute, did not possess the power to compel all railroad companies operating within the city limits to elevate their tracks over all streets within a certain prescribed district.    Appellants insist that it was the decision in the latter case which led to the enactment of the aforesaid track elevation statute.

Appellants, as owners of property abutting on Kentucky avenue, a public street in the city of Indianapolis, contend that they have suffered damages on account of the changing by lowering of the grade of said street; that as a result thereof the access to their packing house has been materially interfered with, and rendered inconvenient and difficult. Their counsel, to some extent, discuss their right to damages on account of the elevation of the railroad tracks on Louisiana street, but it does not appear that their property abuts on the latter street. They also advance a claim for damages on account of being deprived of switching facilities as the result of the elevation of the tracks of the Cleveland, Cincinnati, Chicago and St. Louis Railway Company, on which railway their property abuts, but this latter claim is virtually abandoned by counsel in their argument. It may be said, we believe, that the principal point relied on by appellants is as to their right, as abutters under the law and the facts, to recover consequential damages on account of lowering or depressing the grade of Kentucky avenue.

There is no claim that there was any negligence or lack of skill by the city in the performance of the work of which they complain. As we view the question, we are of the opinion that the necessary alteration, change or elevation of the grades of streets and the depression and elevation of steam railroad tracks, where they cross public streets or highways within said city, as authorized by the statute and required to be done under the resolution of the board of public works, must be regarded as a matter wholly of street improvement. This certainly was the view entertained by the legislature, for it is provided in the statute authorizing the work that the city and other municipalities therein mentioned shall, under certain conditions, pay a per cent of the total cost arising out of the work. We judicially know, through the public press and as common history, that at and prior to the passage of the street elevation statute, the public streets of the city of Indianapolis at the grade cross-

ings of railroad tracks therein had, at such points, become and were quite dangerous, and almost daily accidents happened at these crossings, resulting in the loss of lives of persons and personal injury to others. In order to obviate this danger, the legislature, by the statute in question, conferred on the city of Indianapolis a part of the State's police power, to be exercised by it in promoting the safety of the public travel. It was under this power that the board of public works acted in initiating and carrying out the necessary work of improving the unsafe condition of the public streets, by means of elevating and depressing railroad tracks at street crossings.

Both the statute and the resolution adopted by the board of public works in pursuance thereof disclose that the object contemplated by the work as authorized was to improve the condition of the public streets of the city of Indianapolis, and to render them more safe for the traveling public at points where they were crossed by the tracks of steam railroads operating within the city. The board of public works, as authorized, instituted the proceeding, ordered the improvement, prescribed the plans and specifications, and supervised and controlled the construction of the work in detail. All that the railroads had to do in respect to the matter was to proceed as ordered by said board, and to pay the percentage of the total cost assessed against them under the law. The work authorized by the statute in question was a matter of public improvement; or, in other words, a legitimate street improvement for the benefit of the traveling public, and in no sense a railroad construction. The work was authorized and carried out under the police power, for the conservation of the public safety and welfare. *Summerfield* v. *City of Chicago* (1902), 197 Ill. 270, 64 N. E. 490; *Talbot* v. *New York, etc., R. Co.* (1896), 151 N. Y. 155, 45 N. E. 382; *People, ex rel.,* v. *Grand Trunk, etc., R. Co.* (1908), 232 Ill. 292, 83 N. E. 839; *Fries* v. *New York, etc., R. Co.* (1901), 169 N. Y. 270, 62 N. E. 358.

In *Summerfield* v. *City of Chicago, supra,* the court said: "The great advantage to the public to be attained by the elevation of the tracks of railroads at street intersections of a city is too manifest to be questioned. Not only public convenience and the business of the community are advanced by the elevation of the tracks, but that which is by far the more important—the citizen is secured from the many dangers which imperil life and limb where the trains of railroad cars cross street intersections at grade. The use of the street by a railroad, though lawful and legitimate, to some extent obstructs the street, and to a degree deprives the citizens of the full and unrestricted use of it. \* \* \* The end to be attained was to accommodate the public business and increase the facilities and safety of transit along the street and the avenue and across the intersection thereof."

The Supreme Court of the United States in *Sauer* v. *City of New York* (1907), 206 U. S. 536, 27 Sup. Ct. 686, 51 L. Ed. 1176, said: "The state courts have uniformly held that the erection over a street of an elevated viaduct, intended for general public travel and not devoted to the exclusive use of a private transportation corporation, is a legitimate street improvement equivalent to a change of grade; and that, as in the case of change of grade, an owner of land abutting on the street is not entitled to damages for the impairment of access to his land and the lessening of the circulation of light and air over it." Citing many authorities.

It will be noted that §2 of the statute (Acts 1905 p. 144, §8865 Burns 1908), in designating what shall be included in the expense to be borne by the parties in interest, includes "damages, if any, recoverable under existing laws," by any person, firm or corporation on account of such elevation or depression of railroad tracks. This provision does not authorize a recovery of damages on account of elevating or depressing the tracks, but it merely remits or directs persons who may be aggrieved, and who believe themselves to be damaged, to seek redress under existing laws, if

any there be.   Under the circumstances, the inquiry arises, what law, if any, either statutory or common, existed at the time of the enactment of this statute, or at the time of the performance of the work of which appellants complain, which can be said to authorize a recovery by them, against either the city of Indianapolis or the railroad companies, on account of the elevation or depression of the railroad tracks? It will be observed that the damages, as provided by said §2, *supra*, which are to constitute a portion of the expense to be borne by all the parties in interest, are such as are "recoverable under existing laws," etc.   And likewise in §5, *supra*, the damages which the board of public works is to determine are also declared to be such as "may be recoverable under existing laws."

The meaning of the term "recoverable" is well understood.   Its plain, ordinary and natural meaning is that which is capable of being recovered, "obtainable from a debtor or possessor, as by legal process."   Or, in other words, it means that which can be recovered as a matter of legal right.   7 Words and Phrases 6021; *In re Oliver* (1901), 109 Fed. 784, 788; 5 Cent. Dict., 5010, under term "Recoverable."

The rule appears to be well settled that where work of public necessity and convenience has been performed within the limits of a public street of a city or town, through the properly constituted officials under statutory authority, and without negligence or lack of skill, no legal liability arises against the city or town in favor of an abutting property owner for consequential injury or damages sustained by him.   This rule applies in full force in denying a right of action to a property owner for injuries or damages resulting on account of the alteration or change of the grade of the street or streets on which his property abuts.   It is equally well settled by our own decisions, that such consequential injury does not come within

the provision of the state Constitution, which prohibits the taking of private property for public use without compensation therefor being first assessed and tendered. The following are some of the decisions of this court which affirm and enforce the rule denying the right of recovery of an abutting property owner for consequential damages on account of the change or alteration of the grades of public streets: *Snyder* v. *President, etc.* (1855), 6 Ind. 237; *Macy* v. *City of Indianapolis* (1861), 17 Ind. 267; *City of Wabash* v. *Alber* (1882), 88 Ind. 428; *City of Kokomo* v. *Mahan* (1885), 100 Ind. 242; *City of Valparaiso* v. *Adams* (1890), 123 Ind. 250, 24 N. E. 107. The following authorities also sustain the rule in question: *Baker* v. *Town of Shoals* (1893), 6 Ind. App. 319, 33 N. E. 664; *Hirth* v. *City of Indianapolis* (1897), 18 Ind. App. 673, 48 N. E. 876; *Sauer* v. *City of New York, supra,* and cases there cited; *City of Pontiac* v. *Carter* (1875), 32 Mich. 164; *Callender* v. *Marsh* (1823), 1 Pick. (Mass.) 418; *Skinner* v. *Hartford Bridge Co.* (1861), 29 Conn. 523; *O'Connor* v. *City of Pittsburgh* (1851), 18 Pa. St. 187; *Radcliff's Exrs.* v. *Mayor, etc.* (1850), 4 N. Y. 195, 53 Am. Dec. 357; *Smith* v. *Corporation of Washington* (1857), 20 How. (U. S.) 135, 15 L. Ed. 858; *Northern Trans. Co.* v. *City of Chicago* (1879), 99 U. S. 635, 25 L. Ed. 336; *Wabash R. Co.* v. *City of Defiance* (1897), 167 U. S. 88, 17 Sup. Ct. 748, 42 L. Ed. 87; *Rauenstein* v. *New York, etc., R. Co.* (1893), 136 N. Y. 528, 32 N. E. 1047, 18 L. R. A. 768; Lewis, Eminent Domain (3d ed.) §§131-134, 339; 2 Dillon, Mun. Corp. §§686, 987. See Consequential Damages, 15 Cyc. 653 and notes; Elliott, Roads and Sts. (2d ed.) §463.

In the case at bar, it does not appear that by the work in question there has been any invasion of appellants' property, or any appropriation thereof under the authority of eminent domain. Kentucky avenue, the particular street on which appellants' property abuts, has not been changed, neither has it been subjected to any new or

additional servitude, but continues to be used for public travel to the full extent thereof. Under such circumstances, the rule appears to be well settled, that, in the absence of constitutional or statutory provision requiring compensation for property injured, as distinguished from property taken, no damages can be recovered by the abutting property owner for consequential injuries or damages resulting from elevating or depressing a street done in carrying it over or under railroad tracks or other obstructions, where such work and change are legally authorized in the interest of public safety and convenience. The following authorities support this rule: *Home Bldg., etc., Co.* v. *City of Roanoke* (1895), 91 Va. 52, 20 S. E. 895, 27 L. R. A. 551; *Robinson* v. *Great Northern R. Co.* (1892), 48 Minn. 445, 51 N. W. 384; *Henderson* v. *City of Minneapolis* (1884), 32 Minn. 319, 20 N. W. 322; *Hyde* v. *Boston, etc., R. Co.* (1907), 194 Mass. 80, 80 N. E. 517; *Hurt* v. *City of Atlanta* (1896), 100 Ga. 274, 28 S. E. 65; *Selden* v. *City of Jacksonville* (1891), 28 Fla. 558, 10 South. 457, 14 L. R. A. 370, 29 Am. St. 278; *Willets Mfg. Co.* v. *Board, etc.* (1898), 62 N. J. L. 95, 40 Atl. 782; *Wilson* v. *New York, etc., R. Co.* (1886), 2 N. Y. Supp. 65; *Uline* v. *New York, etc., R. Co.* (1886), 101 N. Y. 98, 108, 4 N. E. 536, 54 Am. Rep. 661; *Conklin* v. *New York, etc., R. Co.* (1886), 102 N. Y. 107, 110-111, 6 N. E. 663; *Rauenstein* v. *New York, etc., R. Co., supra; Talbot* v. *New York, etc., R. Co., supra; Fries* v. *New York, etc., R. Co., supra; Smith* v. *Boston, etc., R. Co.* (1905), 181 N. Y. 132, 73 N. E. 679; *DeLucca* v. *City of North Little Rock* (1905), 142 Fed. 597. The following support the same rule: *Sauer* v. *City of New York, supra; Northern Trans. Co.* v. *City of Chicago, supra; Willis* v. *City of Winona* (1894), 59 Minn. 27, 60 N. W. 814, 26 L. R. A. 142; *Colclough* v. *City of Milwaukee* (1896), 92 Wis. 182, 65 N. W. 1039; *Walish* v. *City of Milwaukee* (1897), 95 Wis. 16, 69 N. W. 818; *Brand* v. *Multnomah County* (1900), 38 Or. 79, 60 Pac. 390, 62 Pac. 209, 50

L. R. A. 389, 84 Am. St. 772; *Warner* v. *State* (1909), 117 N. Y. Supp. 108, 132 App. Div. 611; *Scranton* v. *Wheeler* (1900), 179 U. S. 141, 154, 21 Sup. Ct. 48, 45 L. Ed. 126.

The authorities above cited clearly settle the proposition that appellants have no right to recover against the city of Indianapolis the consequential damages which they claim to have sustained on account of the change or alteration of the grade of Kentucky avenue, in the absence of some constitutional or statutory provision awarding to them such right.

The rule, as sustained by the aforesaid authorities, is clearly declared in *Rauenstein* v. *New York, etc., R. Co., supra,* where it is held that a change of street grade invades no private right, and whatever the inconvenience to the abutting owner may be, it deprives him of no property right for which he had not been compensated previously. It is further affirmed in that case, that where a street or highway becomes such by dedication, compensation for the easement is expressly waived by the dedicator. If taken under the law of eminent domain, the compensation awarded and paid covers all the damages sustained, present and future, among which there is necessarily embraced such as might flow from a change of grade of a street required for the public use or convenience.

Appellants certainly had a right of access from their premises to Kentucky avenue, the street on which their premises abut, but they had no legal right to demand that

7. the grade of this street should not be changed or altered, in case the benefit of the public demanded it, because it might interfere with or render inconvenient the access which they enjoyed prior to the change of such grade. Their right of access was a private one; they held and enjoyed it subject to the great rights of the State, through the city of Indianapolis as an instrumentality or agent, to improve the street as a public highway, or to change the grade thereof when the necessity of the public

demanded it. As a general rule, the rights of persons must always yield to those of the public. In the case of *Radcliff's Exrs.* v. *Mayor, etc., supra,* the city of Brooklyn in grading a street caused an embankment to be dug away, whereby plaintiffs' premises were undermined and caved in, causing them heavy damage. It was held that in the absence of proof showing a failure to exercise proper care and skill in the execution of the work, no action for damages could be maintained by the adjacent owner. The court in that case said: "In some instances the landowner will suffer a heavy loss; and this case may, perhaps, be one of the number; but it is *damnum absque injuria* and the owner must bear it. He often gets the benefit for nothing, when the value of his land is increased by opening or improving a street or highway; and he must bear the burden in the less common case of a depreciation in value in consequence of the work." This case has been followed repeatedly by the court of appeals of New York. See *Sauer* v. *City of New York* (1904), 180 N. Y. 27, 72 N. E. 579, 70 L. R. A. 717.

In the case of *Northern Trans. Co.* v. *City of Chicago, supra,* the city of Chicago was engaged in constructing a tunnel for street purposes under the Chicago river. In doing the work the plaintiff's access to its wharf, in the navigation of the river, as well as its access to its warehouse from the street, was temporarily impeded, and it suffered damages thereby. The improvement was made under the authority conferred by the legislature. It was held that the city was not liable. Justice Strong in delivering the opinion of the court said: "It is undeniable that in making the improvement of which the plaintiffs complain the city was the agent of the state, and performing a public duty imposed upon it by the legislature; and that persons appointed or authorized by law to make or improve a highway are not answerable for consequential damages, if they act within their jurisdiction and with care and skill, is a doctrine almost universally accepted alike in England

and in this country. * * * The state holds its highways in trust for the public. Improvements made by its direction or by its authority are its acts, and the ultimate responsibility, of course, should rest upon it. But it is the prerogative of the state to be exempt from coercion by suit, except by its own consent. This prerogative would amount to nothing if it does not protect the agents for improving highways which the state is compelled to employ. The remedy, therefore, for a consequential injury resulting from the state's action through its agents, if there be any, must be that, and that only, which the legislature shall give. It does not exist at common law. * * * Acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are universally held not to be a taking within the meaning of the constitutional provision. They do not entitle the owner of such property to compensation from the state or its agents, or give him any right of action. This is supported by an immense weight of authority.''

Appellants' counsel refer us to §3508 Burns 1894, §3073 R. S. 1881, and contend that under the provisions of this section their clients are entitled to recover all damages

8. which they have suffered on account of the change or alteration of the grade in question. This section is §27 of an act of the legislature providing for the incorporation and government of cities, approved March 14, 1867 (Acts 1867 p. 33). Therein, among other things, it was provided ''that when the city authorities have once established the grade of any street or alley in the city, such grade shall not be changed until the damages occasioned by such change shall have been assessed and tendered the parties injured or affected by such change, and such damages shall be collected by the city from the party or parties asking such change of grade in the manner provided for the collection of street improvements.''

Under this provision it was held by this court, in *City of Logansport* v. *Pollard* (1875), 50 Ind. 151, that a street grade, once established, could not be changed until the damages suffered by the parties in consequence of such change had been assessed and tendered to them.

Appellees, however, insist that this provision was repealed, at least so far as it concerns or applies to the city of Indianapolis, by an act of the legislature approved March 6, 1891 (Acts 1891 p. 137, §3772 Burns 1894), which pertains to cities having a population of more than 100,000, and which act is commonly known as the charter of the city of Indianapolis. This contention is sustained by the decision in the case of *Hirth* v. *City of Indianapolis, supra.* In that case the Appellate Court held that the provision in question had been repealed by the act of 1891, *supra.* After a thorough examination of the question, we have reached the conclusion that the holding of the Appellate Court was correct. Said act of 1891 (§3830 Burns 1894), among the powers and duties prescribed in respect to the department of public works, fixed and defined the following: "To lay out, open, change, vacate, and to fix or change the grade of any street, alley, or public place within such city, and to design, order, contract for, and execute the improvement or repair of any street, alley or public place within such city." By the repealing clause of said act it was declared that: "All laws within the purview of this act, and inconsistent herewith are hereby repealed." While the city of Indianapolis under the provisions of the act of 1891, *supra,* was invested with full power in respect to the control and improvement of its streets, and was empowered to change the grade of any street or alley within the corporate limits of the city, the act contains no provision for the assessment and tender of damages resulting from such change of street grade, nor in any manner does it make the city liable for damages resulting from such change. In this respect it is entirely silent.

Counsel for appellants, however, argue that while the char-
ter or governing statute of the city of Indianapolis, enacted
in 1891 (Acts 1891 p. 137), is silent on the question
of damages in respect to the change or alteration of
9. the grades of the streets thereof, it cannot be said
to be inconsistent with the provisions for the assessment of
damages, as contained in the. governing act of 1867 (Acts
1867 p. 33). This argument is not tenable. The said act of
1891 in relation to cities of more than 100,000 was, so far
as such cities are concerned, a revision of the former gov-
erning law of 1867, which applies to all cities within the
State. The rule applicable to the question as here pre-
sented is well stated in 1 Lewis's Sutherland, Stat. Constr.
§270, as follows: "As a general rule whatever is excluded
from the revised act is repealed. * * * Where a statute
is revised, or a series of acts on the same subject are re-
vised and consolidated into one, all parts and provisions of
the former act or acts, that are omitted from the revised
act, are repealed. 'Even although the provisions of unre-
pealed legislation may not be inconsistent with those of a
new enactment, still when it is plain that it is the legislative
intent to embrace the whole subject, it is well settled that
what is not included in the later statute must be held to
have been discarded.' "

The same rule is affirmed in *Thomas* v. *Town of Butler*
(1894), 139 Ind. 245, 38 N. E. 808. This court in that case
held that when a new statute covers the whole subject-matter
of an old one, adds new provisions and makes changes, and
where such new statute, whether it be in the form of an
amendment or otherwise, is intended to be a revision and to
take the place of the old, it repeals the old law by implica-
tion. To the same effect is the holding in *Hadley* v. *Mussel-
man* (1886), 104 Ind. 459, 3 N. E. 122.

Finally, it is contended by appellants' counsel that if
the Indianapolis city charter of 1891 repealed §3508 Burns

1894, Acts 1867 p. 33 §27 so far as it applied to that city, then the legislature provided one rule of law for the city of Indianapolis and another rule for other cities, for damages suffered under similar conditions and circumstances, and that to deny to an abutting owner in the city of Indianapolis damages resulting from the change of a street grade, when they are awarded to abutting owners of other cities of the State, would be a violation of the 14th amendment of the federal Constitution.

A sufficient answer to this argument is that on March 6, 1905 (Acts 1905 p. 219), there was passed by the legislature an act entitled "An act concerning municipal corporations," which, as a governing law, applied to the city of Indianapolis and to all other cities of the State. This statute went into effect on April 15, 1905. It contained no provision whatever making any of the cities therein embraced liable for damages arising out of the changing or altering of the grade of any street or alley. It is manifest, therefore, on this view of the case, that at the time of and long prior to the change of the grade of Kentucky avenue, upon which appellants base their claim for damages, the provision of the act of 1867, on which they rely, had been repealed by the act of 1905, and it no longer existed or was in force in any city of this State. As the provision in question had been repealed or discarded by the act of 1905 concerning municipal corporations before the change in the grade of Kentucky avenue was made, therefore the common-law rule in respect to a liability for damages on account of the change of a street grade applied to all the cities of this State. It therefore follows that on no view is there any foundation whatever to support the question which appellants seek to present under the 14th amendment of the federal Constitution.

To recapitulate: The work in question was carried out by the city of Indianapolis as authorized by the act of the

legislature, and as required by a resolution thereunder adopted by the board of public works of the city of Indianapolis. The purpose thereof was to promote the safety of the public travel over and upon the streets of that city. At the time the work was done, of which appellants complain, there was no existing law under which they, as abutting owners, were entitled to recover damages resulting merely from the change of the street grade. The authorities relied on by appellants' counsel are decisions of courts in cases arising in states whose constitutions require compensation to be made not only for property taken or appropriated, but also for property injured or damaged. These fundamental provisions are quite different from §21 of our bill of rights (Const. Art. 1, §21), which prohibits only the *taking* of property without just compensation. In fact we have not been able to discover any decision of the higher courts, outside the State of Ohio, which in the absence of some statutory or constitutional provision holds a city liable to an abutting owner for consequential damages on account of the change of a street grade, where the work has been done under legal authority in a careful manner; or, in other words, without negligence or lack of skill. The decisions of the supreme court of Ohio, to which appellants refer, were relied on in *Snyder* v. *President, etc.* (1855), 6 Ind. 237, but this court in that case refused to approve and follow them. As a general rule we adhere to and follow our own decisions wherein the rules of the common law are expounded, and we are not required to accept and follow the common law as expounded or enforced by the higher courts of sister states. *Nathan* v. *Lee* (1899), 152 Ind. 232, 52 N. E. 987, 43 L. R. A. 820.

To reassert: The city of Indianapolis in carrying out the work in question, under the statute enacted by the legislature, was in the exercise of the police power of the State. This power is one of wide scope. It not only embraces laws and regulations which are intended to

promote the public health, morals or safety, or to suppress
that which is disorderly or unsanitary, but it also embraces
and applies to laws and regulations which conduce to the gen-
eral welfare of the public or the State. *State* v. *Gerhardt*
(1896), 145 Ind. 439, 44 N. E. 469, 33 L. R. A. 313; *Chicago,
etc., R. Co.* v. *People, ex rel.* (1906), 200 U. S. 561, 26 Sup.
Ct. 341, 50 L. Ed. 596; *McLean & Co.* v. *Denver, etc., R. Co.*
(1906), 203 U. S. 38, 54, 27 Sup. Ct. 1, 51 L. Ed. 78; *Bacon*
v. *Walker* (1907), 204 U. S. 311, 27 Sup. Ct. 289, 51 L. Ed.
449; *Muller* v. *State* °(1908), 208 U. S. 412, 28 Sup. Ct. 324,
52 L. Ed. 551; *District of Columbia* v. *Brooke* (1909), 214
U. S. 138, 29 Sup. Ct. 560, 53 L. Ed. 941; *New York, etc.,
R. Co.* v. *Bristol* (1894), 151 U. S. 556, 14 Sup. Ct. 437, 38
L. Ed. 269; 22 Am. and Eng. Ency. Law (2d ed.) 932,
933.

It certainly may be affirmed that the track elevation stat-
ute here involved, as was said by the court in *New York,
etc., R. Co.* v. *Town of Bristol, supra,* in regard to the
one there under consideration, "is directed to the ex-
tinction of grade crossings as a menace to public
safety and is therefore within the exercise of the police
power of the state."

Certainly under the facts, and the law applicable thereto,
no liability in favor of appellants can be charged against
the steam railroad companies. These companies were
lawfully occupying the streets of the city of Indian-
apolis in the operation of their railroads. The work
which they performed in the matter in question was in pur-
suance of an order of the board of public works made under
the authority of an act of the legislature. No negligence or
carelessness is imputed to these companies. They acted
under the authority conferred on the city by the legislature,
and if the latter is not liable to appellants, certainly there
is no ground on which a liability of the railroad companies
can be based. The elevation statute in question neither
violates the Constitution of this State, nor the 14th amend-

ment of the federal Constitution, as counsel for appellants contend. That it is in no manner antagonistic to the 14th amendment is fully settled by the decisions in *Sauer* v. *City of New York* (1907), 206 U. S. 536, 27 Sup. Ct. 686, 51 L. Ed. 1176, and *New York, etc., R. Co.* v. *Town of Bristol, supra.*

It follows, and we so hold, that appellants' claim for damages upon the facts disclosed by the record cannot be sustained, and the judgment of the lower court was a correct result and is therefore affirmed.

Morris, J., dissents.

NOTE.—Reported in 94 N. E. 705. See, also, under (1) 33 Cyc. 299; (3) 33 Cyc. 290; (4) 33 Cyc. 293; (5) 28 Cyc. 1069; 4 Ann. Cas. 1185; 36 L. R. A. (N. S.) 796; (6) 15 Cyc. 653; (7) 28 Cyc. 1078; (8) 28 Cyc. 1088; (9) 36 Cyc. 1077; (10) 8 Cyc. 1059; (11) 28 Cyc. 1069; (12) 8 Cyc. 1127; 36 L. R. A. (N. S.) 1194; (13) 11 Cyc. 749; (14) 8 Cyc. 864; (15) 8 Cyc. 871; (16) 33 Cyc 293; (17) 8 Cyc. 1117. As to the liability of a municipal corporation for nuisance caused by change of highway grade, see 1 L. R. A. (N. S.) 796. As to the elements of damage allowable in proceedings in the exercise of the power of eminent domain, see 85 Am. St. 291.