RANDALL ET AL. v. BOARD OF COMMISSIONERS OF
TIPPECANOE COUNTY.

[No. 10,623.    Filed June 10, 1921.    Rehearing denied October
4, 1921.    Transfer denied January 10, 1922.]

1. PUBLIC LANDS.—*Public Grants.*—*Construction.*—Public grants
are to be construed strictly and nothing passes by implica-
tion, and this is especially true where the right claimed tends
to impair the state's power to exercise its ordinary govern-
mental functions, or to suspend its powers of improving and
rendering safe an important line of travel.   p. 327.

2. COUNTIES.—*Conveyance of Land Held for Highway Purposes.*
—*Reversionary Right to Fee in Highway.*—A deed by a county,
conveying a strip of land by definite bounds, which strip was
part of a larger strip of land held for highway purposes and
for the abutment of a bridge, *held* not to convey any reversion-
ary right in the fee to the center line of the entire strip, nor
to any special interest therein.   p. 327.

3. EASEMENT. — *Easements by Prescription.* — *Acquisition of
Right Against Government.*—No prescriptive right can be ob-
tained against the government nor county as to land held for
the public, and the owner of land abutting an embankment
used for a highway leading to a bridge could not obtain by
prescription the right to have the embankment remain as
a protection to his lands against flood waters or as a means
of ingress and egress to his property.   p. 327.

4. EMINENT DOMAIN.—*Removal of Embankment by County.*—
*Exposure of Abutting Lands to Floods.*—*Landowner's Right to
Damages.*—Where a county removed an embankment, upon
which was a road leading to a bridge, when constructing a
new bridge, resulting in the loss of protection to adjacent lands
from flood waters and of a means of ingress and egress to
such lands, the owners thereof were not entitled to recover
for the consequential damage sustained as an incident to the
improvement.   p. 329.

From Tippecanoe Superior Court; *Henry H. Vinton,*
Judge.

Action by William Randall and others against the
Board of Commissioners of Tippecanoe County. From
a judgment for defendant, the plaintiffs appeal. *Af-
firmed.*

*Charles M. Snyder, Morris R. Parks, George D. Parks, Otto Gresham* and *William G. Nolin,* for appellants.

*Allen Boulds, Daniel P. Flanagan, Jones & Lairy* and *Ed Jackson,* for appellee.

ENLOE, C. J.—This was an action to recover damages alleged to have been sustained by appellants to certain real estate owned by them, located just west of the Wabash River and immediately south of the west end of the wagon bridge across said river, which said bridge is at the west end of Main street, in the city of Lafayette.

To an amended complaint in two paragraphs a demurrer was sustained, and appellants, refusing to further plead, judgment was rendered against them for costs, from which judgment this appeal is prosecuted.

The errors assigned challenge the correctness of the rulings on said demurrer.

The paragraphs of complaint are each quite lengthy, but the following material facts appear from the averments thereof:

In 1863 a corporation known as "The Main Street Bridge Company," was duly organized under the laws of the State of Indiana for the purpose "of constructing and owning a bridge across the Wabash River in Tippecanoe County, Indiana, and of constructing and owning an embankment or causeway, which shall be most direct across the Bottom Land on the west side of Wabash River and connect said bridge with the said road leading westward from Lafayette."

It further appears from the averments of said complaint that said bridge company brought suit against the then owners of said "bottom land," for the purpose of acquiring, by condemnation proceedings, a strip of ground 125 feet wide, and 1,560 feet long, extending from the Wabash River westwardly across the said "bot-

tom land," said strip being in the line of said West Main street projected; that such proceedings were had in said cause that on June 28, 1864, the court entered its judgment and decree, "that said Main Street Bridge Company stand seized in fee simple of said strip of land, appropriated by said bridge company, as and for the use of an embankment or causeway for her bridge, upon the payment of $1,347 damages, within one year;" that in July, 1864, said damages were paid, and said bridge company at once entered upon and took possession of said strip of land; that in 1871, said bridge company sold, and in consideration of $27,300 paid to it, conveyed by its warranty deed to appellee herein its toll road and bridge across the Wabash River, situate at the foot of Main street in the city of Lafayette, together with all the rights, privileges, and appurtenances thereunto belonging; that in June, 1875, the appellee, by its warranty deed, conveyed to one Martin, a remote grantor of appellant, a strip of ground twenty-two and one-half feet wide, off the southerly side of said 125 foot strip, said strip extending from the east end of said 125 foot strip for some distance to the west, and which strip now forms the north part of appellant's lands, alleged to have been damaged, and for which this suit is brought; that for more than twenty years prior to March, 1913, a bridge erected by appellee for the accommodation of wagons and other vehicles had been maintained together with the embankment or causeway upon which the roadway was constructed by the appellee herein; that the high waters of said river in March, 1913, undermined one of the piers of said bridge causing the same to settle and said bridge to become unsafe; that in September, 1913, the appellee entered into a contract for the construction of a new bridge across the Wabash River at said point, to take the place of the one so injured in the preceding March; that according

to the plans and specifications adopted for said new bridge, the west end thereof was located 170 feet to the west of the west abutment of the old bridge.

It further appears, from the averments of the complaint, that the said levee or causeway, extending westward from the west abutment of said old bridge, was eighty feet in width, and was constructed along the center line of said 125 foot strip; that said levee was twenty-five feet high; that the low water banks of said river at said point are twelve feet high; that said levee or causeway was a public highway and was without openings in said embankment; that from the west abutment of said old bridge, a levee had been constructed southward to the right of way and embankment of the Lake Erie and Western Railway, and along the east line of appellant's land, thus protecting his said lands from overflow by the water from said river; that west of said bridge and on the southerly side of said highway a sidewalk had been constructed, and that the appellant was the owner of a building, situate on the northerly end of his said land, which building had been so built that the floor thereof was on a level with said sidewalk; that said sidewalk extended to the southerly property line of appellee, and that said building of appellant was constructed along his northerly line and abutted said sidewalk, and that appellant had access for ingress and egress to and from said building to said highway across said sidewalk.

It further appears that in preparation for the construction of said new bridge the east end of said levee, or causeway, for a distance of 170 feet, from the old west pier to the new west pier, was entirely removed and taken away; that a pier for the new bridge is located 125 feet east of said west pier, and north of appellant's land; that said portion of said new bridge conforms to the old levee, or causeway, as to the center

lines thereof; that said new bridge, as to the floor thereof, is nine feet higher than the old roadway; that the roadway of said new bridge is forty feet in width from curb to curb, with a sidewalk eight feet in width on either side thereof; that on both sides of said bridge is constructed a massive stone railing; that since the removal of said embankment the waters of said river flow over and upon the surface of appellant's property, and carry vast quantities of earth, sand, and debris thereon; that appellant's access to said property has been, by the work of building said bridge as aforesaid, entirely cut off and destroyed and that said property is now of no value, and that they have sustained damage in the sum of $12,000.

From the foregoing facts it will be seen that to the south of said new bridge, and between the said bridge and appellant's northerly property line, is a space of about ten feet,—land owned by the appellee,—and that appellant is without any means of getting from said roadway, or bridge, onto his land.

The theory of appellant's complaint is manifest from the following averments, as found in his complaint, viz.: "That plaintiffs and their grantors, immediate and remote, for more than twenty years prior to the 9th day of September, 1913, *owned, and had a special interest and easement in said levee and bridge abutment*, at the west end of said Main Street bridge, adjoining plaintiff's property, and the maintenance of said bridge abutment and levee was necessary to the use and enjoyment of plaintiff's property, and the preservation of plaintiff's soil, and in the protection of plaintiff's property against waters of Wabash River; * * * that the plaintiffs owned the right and *easement of all the support and protection, against high waters of the Wabash River, which plaintiff's property had received, and of which plaintiffs and their grantors, immediate and remote, had*

been in possession for more than twenty years prior to said 9th day of September 1913." (Our italics.)

There is no allegation in said complaint that the appellee herein, in any way, in the matters connected with the building of said new bridge, did not follow the law. In fact the said complaint expressly alleges, "That the defendant, acting within the scope of its authority," let the contract for the removal of said levee. It is also expressly alleged, "that the defendant, acting within the scope of its authority, took such necessary steps and action to the end that on the 9th day of September, 1913, said defendant let and entered into a contract for the construction of a new bridge across said Wabash River from the west end of Main street, in said city of Lafayette, according to certain plans and specifications."

It further appears from the averments of the complaint that no part of appellant's land has been actually taken and appropriated in said work. In fact, as before stated, the new bridge and the abutments thereof are entirely on land owned by appellee. The averments show that to the south of the piers of said bridge, there is three and one-half feet of land owned by appellee.

That the appellants have suffered a damage in the matter of this property is without question but the nature of this damage, whether direct or simply consequential, is the matter we must now consider.

The appellee insists that the averments of the complaint show that no property of appellant's was taken, and that therefore the damage complained of is merely consequential, and it therefore insists there can be no recovery. The appellants insist that they had a "special interest and easement in said levee and bridge abutment," *which interest and easement was property,* and which was taken, and also that they *had an easement and property right in said levee and highway,* as a way of egress and ingress from and to their said premises,

and which also was taken, and that therefore they are entitled to the damage they have sustained.

The answer to the question presented, as we view it, depends upon the validity of the claim of appellants to a property right in and to the said embankment, and to a way of egress and ingress across said sidewalk. If appellants had any property right as against the appellee, in and to said embankment, that right was taken from them. If they had any property right of egress and ingress, as against the appellee, in and to said sidewalk, that right was also taken away from them. If, on the other hand, the appellants had no such rights as those claimed, then the provision of our Constitution relative to the taking of private property for public purposes, can, as we view it, have no application to the facts of this case, and the damages sustained by appellants are simply consequential.

The Main Street Bridge Company was authorized by statute to acquire a fee of the lands on which to construct its road and bridge, (2 R. S. 1852, §702) and in the proceedings in condemnation brought by it, as set forth in the complaint, it did, by the judgment and decree of said court, acquire title to said 125-foot strip, in fee simple. This title it conveyed to the appellee, which still holds the same except said twenty-two and one-half foot strip sold as hereinbefore stated. But it is urged that the sale of said strip conveyed a reversionary interest in the residue, to the center line of said 125 foot strip, and that this gave the basis for the right of easement claimed.

It will be noted that the deed to the said twenty-two and one-half foot strip conveyed the same by definite bounds. As said by Chancellor Kent: 3 Kent's Commentaries (12th ed.) p. [572]: "But it is competent for the owner of a farm or lot, having one or more of its sides on a public highway, to bound it by express

terms on the side or edge of the highway, so as to rebut the presumption of law, and thereby reserve for himself his latent fee in the highway. He may convey the adjoining land without the soil under the highway, or the soil under the highway with the adjoining land. If the soil under the highway passes by a deed of the adjoining land, it passes as parcel of the land and not as appurtenance." See also *Gebhardt* v. *Reeves* (1874), 75 Ill. 307; *Helm* v. *Webster* (1877), 85 Ill. 116.

By the deed executed by the appellee, conveying said strip, it was conveying a part of the land held by it in fee for highway purposes. It is a maxim of the 1. law that public grants are to be construed strictly. Nothing passes by implication. *U. S.* v. *Arredondo* (1832), 6 Peters 736, 8 L. Ed. 547, and authorities there cited. This is especially true where the right claimed tends to impair the state's power to exercise its ordinary governmental functions, or to suspend its powers of improvement and rendering safe an important line of travel. *Charles River Bridge* v. *Warren Bridge* (1837), 11 Peters 420, 9 L. Ed. 773.

In harmony with the foregoing authorities we hold that by and under the said deed executed by appellee, conveying said twenty-two and one-half foot 2. strip, appellants nor their remote grantor, acquired any reversionary right to the fee of said highway, nor to any special interest therein.

Did the appellee acquire any "special interest" or easement in and to said embankment and highway, by reason of an uninterrupted use of the same as a 3. way of egress and ingress to their property, by themselves and their grantors, for more than twenty years?

In considering this question it is important to keep in mind that the fee of said lands was in appellee; that appellee was holding it *for the public;* that appellee in

so holding it, was simply a representative of the "sovereign,"—"the people."

It was a maxim of the old common law that no prescriptive right could be asserted against the King. In this country we find the maxim stated thus, "No prescriptive right can be obtained against the Government."

In the case of *Commonwealth* v. *Sisson* (1905), 189 Mass. 247, 75 N. E. 619, 1 L. R. A. (N. S.) 752, 109 Am. St. 630, the Sissons were owners of a sawmill, and discharged the sawdust therefrom into a certain named river. The fish and game commissioners of Massachusetts, acting under authority of a statute, had ordered the Sissons to refrain from so discharging the sawdust, because the same was injurious to the fish in said river. They refused to comply with that order. An action having been brought against them they sought to defend on the ground of a prescriptive right. Upon the trial they requested the court to hold the law to be as follows: "That the defendants, and the predecessors in title, having been discharging sawdust from their sawmills for more than twenty years consecutively, under a claim of right, into the Konkapot River, have acquired by prescription a title to such right, and such right is their property, of which they cannot be deprived without compensation."

Which request was by the trial court refused, and on appeal the Supreme Court in passing upon the question presented said: "The right to run a sawmill on the banks of a brook or a river is, like all rights of property, subject to be regulated by the Legislature when the unrestrained exercise of it conflicts with other rights public or private. The defendants' contention that they have a prescriptive right to discharge sawdust into the river (even if it kills or injures the fish therein) which prescriptive right cannot be taken away or impaired without compensation being made therefor, means this

and nothing more: Where the Legislature, up to the passage of the act here in question, had not regulated the business of sawing wood on the banks of streams having in them edible fish, and where, in the absence of such regulation, the defendants had discharged sawdust into the stream for thirty years, the people have lost the power to regulate the conflicting rights of sawmills on the bank of the stream and to preserve the fish in the stream itself. The statement of the proposition is enough to show that there is nothing in it."

Are appellants entitled to damages for the consequential damages they have sustained?

In the *City of Chicago* v. *Jackson* (1902), 196 Ill. 496, 63 N. E. 1013, which was an action by a property owner to recover damages alleged to have been sustained by reason of the depreciation of his property consequent upon the lowering of the grade of a street in the construction of a subway, it was said: "Laws and ordinances relating to the comfort, health, convenience, good order and general welfare of the inhabitants are comprehensibly styled 'police laws or regulations;' and it is well settled that laws and regulations of this character, though they may destroy the enjoyment of individual rights, are not unconstitutional, though no provision is made for compensation for such disturbance. They do not appropriate private property for public use, but simply regulate its use and enjoyment by the owner. If he suffers injury, it is either *damnum absque injuria*, or, in the theory of the law, he is compensated for it by sharing in the general benefits which the regulations are intended and calculated to secure. The safety of the people is the supreme object of the law." Dillon, Municipal Corporations §212; *Bancroft* v. *Cambridge* (1879), 126 Mass. 438.

In the case of the *City of Chicago* v. *Rumsey* (1877), 87 Ill. 348, which was an action for damages alleged to

have been sustained in consequence of a tunnel under the Chicago river in LaSalle street, the court held that the fee in the soil of the street in the original town of Chicago, laid off by the canal commissioners, under the provisions of the law, was either in the state or in the city, for the use of the public generally and that it was competent for the city under legislative authority of the state to construct a tunnel in the street, and if done in a proper manner and without unreasonable delay, no action would lie against the city in favor of an adjoining lot-owner whose property had received no physical injury.

In the case of the *Transportation Co.* v. *Chicago* (1878), 99 U. S. 635, 25 L. Ed. 336, which was an action for damage to property alleged to have been occasioned by reason of the construction of the LaSalle street tunnel under the Chicago river, the court said: "The case has been argued on the assumption that the erection of the coffer-dam, and the necessary excavations in the street, constituted a public nuisance, causing special damage to the plaintiffs, beyond those incident to the public at large, and hence, it is inferred, the city is responsible to them for the injurious consequences resulting therefrom. The answer to this is that the assumption is unwarranted. *That cannot be a nuisance, such as to give a common-law right of action, which the law authorizes.* (Our italics.) We refer to an action at common law such as this is. A Legislature may and often does authorize and even direct acts to be done which are harmful to individuals, and which without the authority would be nuisances; but in such a case, if the statute be such as the legislature has power to pass, the acts are lawful, and are not nuisances, unless the power has been exceeded. In such grants of power a right to compensation for consequential injuries caused by the authorized erections may be given to

Randall *v*. Board, etc.—77 Ind. App. 320.

those who suffer, but then the right is a creature of the statute. It has no existence without it. If this were not so, the suffering party would be entitled to repeated actions until an abatement of the erections would be enforced, or perhaps he might restrain them by injunction.

"Here the tunnel of which the plaintiffs complain, or rather its construction, was authorized by an act of the legislature of the State, and directed by an ordinance of the city councils. This we do not understand to be denied, and it certainly cannot be. The State, and the city councils, as its agents, had full power over the highways of the city, to improve them for the uses for which they were made highways, and the construction of the tunnel was an exercise of that power. Since LaSalle Street was extended across the river, the city not only had the power, but it was its duty, to provide for convenience of passage. This it could do either by the erection of a bridge, or by the construction of a tunnel under the river and along the line of the street. And the grant of power by the legislature to build a bridge or construct a tunnel carried with it, of course, all that was necessary for the exercise of the power. We do not understand this to be controverted by the plaintiffs in error. Their argument is, that though the city had the legal right to construct the tunnel, and to do what was necessary for its construction, subject to the condition that in doing the work there should be no unnecessary interference with private property, yet it was liable to make compensation for the consequential damages caused to persons specially injured. To this we cannot assent.

"It is immaterial whether the fee of the street was in the State or in the city or in the adjoining lot-holders. If in the latter, the State had an easement to re-

pair and improve the street over its entire length and breadth, to adapt it to easy and safe passage.

"It is undeniable that in making the improvement of which the plaintiffs complain the city was the agent of the State, and performing a public duty imposed upon it by the legislature; and that persons appointed or authorized by law to make or improve a highway are not answerable for consequential damages, if they act within their jurisdiction and with care and skill, is a doctrine almost universally accepted alike in England and in this country. (Citing authorities.)  *  *  *

"The State holds its highways in trust for the public. Improvements made by its direction or by its authority are its acts, and the ultimate responsibility, of course, should rest upon it. But it is the prerogative of the State to be exempt from coercion by suit, except by its own consent. This prerogative would amount to nothing if it does not protect the agents for improving highways which the State is compelled to employ. The remedy, therefore, for a consequential injury resulting from the State's action through its agents, if there be any, must be that, and that only, which the legislature shall give. It does not exist at common law."

In Roberts v. City of Chicago (1861), 26 Ill. 249, the action was for damages to property caused by raising the grade of the street in front of plaintiff's property, so as completely to block up and destroy access to his property, in consequence whereof, the plaintiff was put to large expense in raising his building to the level of the street, and he was also alleged to have been otherwise injured. The court, in passing upon the question then before it said: "We recognize unhesitatingly as sound law, that the city has the right to establish and change the grades of the streets, and to compel the owners of lots to grade the streets accordingly.  *  *  * and when a grade is established or altered in good faith,

with the purpose of improving the streets, the court will not inquire whether it was the best grade which could have been adopted."

In the case of *Com'rs of Coffey Co.* v. *Venard* (1872), 10 Kas. 95, the said board of commissioners, acting under statutory authority had entered an order vacating a portion of a certain highway. After said order had been entered the appellee filed a claim for damages to his real estate suffered because of such vacation. He obtained a verdict and judgment in the lower court and upon appeal, in passing upon the matter presented the court said: "The main question in this case, and the only one which we think it is necessary to consider, is, whether a county, when the commissioners thereof vacate a county road, is liable in damages to any person who may sustain some loss in consequence thereof. We think a county is not so liable. There is no statute that makes it liable, and we know of no principal of the common law that would create such liability. The county through its officers has an undoubted legal right to vacate county roads. And neither the county nor its officers commit any wrong by so doing; nor do they take any person's property; and therefore, if any consequential loss results to any individual it must be *damnum absque injuria*. Nor can it make any difference that the party claiming damages has some interest in the road different from that of the public in general. It requires more than a peculiar interest in a thing to entitle a party to maintain an action. It requires that the party against whom the action is prosecuted should have committed, or is about to commit some wrong. * * * Nor can it be claimed that the claimant in this case, or any other person, has any vested right or interest in the road as a road. Because it has once been to the interest of the public to open up and travel on a particular road is no reason that the public should

forever afterward be compelled to travel on such road, and pay the expenses of keeping it in repair, or else pay all damages that might result to individuals by reason of its vacation."

In the case of *Bradbury* v. *Walton* (1893), 94 Ky. 163, 21 S. W. 869, a certain public highway had been closed by order of the county court acting under statutory authority.. The appellant claimed damages on account of such closing. It was urged that the statute was unconstitutional in that it authorized the taking of private property for public purposes without just compensation. In passing upon the matter then before it the court said: "The appellee closed the road on his own land, and therefore no trespass was committed by an entry on appellant's land, and unless the latter has some right of property in this easement, not only on his own land, but on the land of the appellee, no action can be maintained by reason of the wrong complained of.

"The public highways of the State, known as county roads, are opened and maintained for the public, and not for mere individual use, and whenever it may be deemed proper to close, alter, or discontinue a county road the power is given to the county court to make such changes as may be conducive to the public welfare, and the right to close a highway that affects the travel on a turnpike is expressly given the county court, to be exercised only when the public good requires it, and of this the county court must be the exclusive judge, and its action only subject to review by some higher tribunal. * * *

"A private citizen has no right of property in a public road, although it passes over his own land, unless he owns the land itself subject to the easement. If the owner of land abutting on a public road has a right of property in the easement, it necessarily follows that no change or alteration can be made without first making compensation to the owner, as it would be a taking

of private property for public use without compensation; but he has no other interest except such as is common to the entire public, and where he is the owner of the land and the road is discontinued, its use then reverts to him to the extent he has title, but no further, * * * The State creates the easement for the entire public; its use is that of the public, one citizen having as much right to this use as the other, and when its abandonment or non-use is deemed necessary for the public good, the county court may discontinue it altogether, and in that tribunal the question must be made."

In *Lexington, etc., R. Co.* v. *Applegate* (1839), 8 Dana (Ky.) 294, 33 Am. Dec. 497, the court said: "An ordinary public way may be discontinued or applied to some other public purpose than that for which it was first established, without any legal liability for pecuniary compensation to the local public, or to any owner of adjoining land—because neither such public nor proprietor had any right of property in the way, or any other legal interest in it than that which was common to all the people."

In the case of *Morris* v. *City of Indianapolis* (1911), 177 Ind. 369, 94 N. E. 705, Ann. Cas. 1915A 65, it was said: "The rule appears to be well settled that where work of public necessity and convenience has been performed within the limits of a public street of a city or town, through the properly constituted officials under statutory authority, and without negligence or lack of skill, no legal liability arises against the city or town in favor of an abutting property owner for consequential injury or damages sustained by him. This rule applies in full force in denying a right of action to a property owner for injuries or damages resulting on account of the alteration or change of the grade of the street or streets on which his property abuts. It is

equally well settled by our own decisions, that such consequential injury does not come within the provision of the state Constitution, which prohibits the taking of private property for public use without compensation therefor being first assessed and tendered."

Applying the principles laid down in the foregoing cases to the facts in this case as stated in said complaint, we must hold that appellants did not have, as against the public authorities, any property right in and to said street and sidewalk, as a way of ingress and egress to and from this said property; that the damage suffered by them under the facts alleged was simply consequential.

Counsel for appellants have cited numerous authorities as sustaining their contention that they had a *property right* in and to said street and sidewalk, as a way of ingress and egress to and from said property.

It is the law that every property owner has such right as against all private persons, or private corporations, and having such right, the authorities neither of city nor state have any right to take such right of access from the owner of such property, and confer the same, or a superior right upon another. Therefore neither city councils nor the legislature, can take from the owner of a lot his way of egress, by authorizing a railroad company to lay its tracks, build a grade, or construct any structure for its advantage, which involves the taking of such property owner's right of access. All persons stand equal before the law. The cases relied upon by appellants involve taking of access to property, by railroads, etc., and are therefore not in point.

The court did not err in sustaining said demurrer. The judgment is affirmed.

Remy, Batman and McMahan, JJ., concur.

Dausman, J., concurs in result.

Nichols, P. J., dissents.

## CONCURRING OPINION.

DAUSMAN, J.—Concurring in result only. I am of the opinion that the averments of the complaint show a taking of private property for a public use and that the plaintiff is entitled to the protection afforded by §21 Art. 1, of the Constitution. It seems to me, however, that the plaintiff is not entitled to maintain an action against the board of commissioners for common law damages. It is well settled that a county is not a municipal corporation. A county is a territorial subdivision of the state. These territorial subdivisions have been devised for the purpose of aiding and facilitating the work of the state government. As part of the plan, the Constitution provides that in each county there shall be certain public officials who are commonly known as "county officers." §2, Art. 6, Constitution. But in truth they are state officers who discharge certain governmental functions of and for the state within their respective territorial limits. On this basis it is held that the citizens (and their property) within a county are not liable for the misconduct of the so-called county officers, unless otherwise provided by legislation. *Board, etc.* v. *Allman* (1895), 142 Ind. 573, 42 N. E. 206, 39 L. R. A. 58; *Smith* v. *Board, etc.* (1892), 131 Ind. 116, 30 N. E. 949; *Morris* v. *Board, etc.* (1892), 131 Ind. 285, 31 N. E. 77; *Board, etc.* v. *Rickel* (1886), 106 Ind. 501, 7 N. E. 220. See *House* v. *Board, etc.* (1878), 60 Ind. 580, 28 Am. Rep. 657.

If the plaintiff had proceeded on the theory that the board of commissioners, in doing the public work described in the complaint, exceeded its power, or wilfully or negligently destroyed his property, his action could not be maintained against the board. The fact that the complaint proceeds on the theory that in doing the public work therein described, the board of commissioners

acted within its powers, and that the taking of his property was incidental, can make no difference with respect to the plaintiff's assumed right to maintain this action.

Exactly what sort of entity is the board of commissioners? The confused state of the law makes it difficult, if not impossible, for one to conceive the precise legal status of that governmental agency. The Constitution refers to these boards as "the boards doing county business in the several counties," and places them under the general heading "Administrative." §10, Art. 6, Constitution. The legislature has declared that: (1) "There shall be organized in each county in this state a board of commissioners for transacting county business, * * *." §5969 Burns 1914, §5731 R. S. 1881. (2) "Such commissioners shall be considered a body corporate and politic by the name and style of 'The board of commissioners of the county of .......... ;' and as such, and in such name, may prosecute and defend suits, and have all other duties, rights and powers incident to corporations, * * *." §5974 Burns 1914, §5735 R. S. 1881.

The Supreme Court has said that a board of commissioners is a court. *Jay* v. *O'Donnell* (1912), 178 Ind. 282, 98 N. E. 349.

Whatever may be the legal status of the board, the members thereof would not be liable to the plaintiff in their private capacity. A judgment against the board in its corporate capacity would be of no value unless a way has been provided by legislation whereby a tax may be levied on the property of the citizens within the county for the purpose of raising a fund to discharge the judgment. If the legislature has provided any method by which the plaintiff may recover for the taking of his property, it must be by way of an assessment of damages. §939 Burns 1914, Acts 1905 p. 59. I am of the opinion that he may have his loss appraised pur-

suant to the statute of which said section is a part, and then file with the board a claim based on the amount thus determined. In the absence of more specific legislation this statute should be liberally construed, and when so construed, it will furnish the plaintiff an ample remedy.

Having mistaken his remedy, I am of the opinion that the plaintiff was not injured by the ruling on the demurrer; and therefore I concur in the result reached by the majority of my associates of this court, but I am unable to concur in the reasoning by which that result has been reached.

## DISSENTING OPINION.

NICHOLS, P. J.—The conclusion reached by the majority of the court, in my view, results in such rank injustice to appellants, and is so subversive of the private rights of a citizen of the state, and is so contrary to the plain unequivocal declaration of the Constitution of the state, and of American Constitutions generally, that I must enter an emphatic protest to such conclusion.

The majority opinion holds, in effect, in harmony with appellee's contention, that the facts as averred in the complaint present a case simply of a change in the grade of a street with consequential damages, and that such change, though it interfere with, or deprive appellants of their ingress and egress to their property, or through it results as averred, in a total destruction of appellants' abutting property, is not a taking thereof for which they are entitled to compensation; that the principle involved is the same as in the case of *Morris* v. *City of Indianapolis* (1911), 177 Ind. 369, 94 N. E. 705, and that therefore we cannot reverse this case without overruling the Morris case. Of course, this court will hardly presume to overrule the Supreme Court, but we do not need to do so in order fully to meet appellee's conten-

tion.    That case, which is the only Indiana case cited in the majority opinion, involved only the alteration or change of the grade of a street, and in such a case it has been repeatedly held in this state that there can be no compensation for damages, and appellants make no contention to the contrary.    It has been held, however, that if in grading a street the lateral support to abutting land is removed, the owner may have damages, *O'Brien* v. *City of St. Paul* (1878), 25 Minn. 331, 33 Am. Rep. 470; *Buskirk* v. *Strickland* (1882), 47 Mich. 389, 11 N. W. 210; *Richardson* v. *Vt. Cent. R. Co.* (1853), 25 Vt. 465, 60 Am. Dec. 283.    Appellants do not contend that the work done by appellee which resulted in the damages complained of was without authority of law. But appellants do claim that they are entitled to compensation for the damages they have suffered, which by the allegations of the complaint, admitted for the purposes of demurrer, were $12,000.    This contention, as I view the case, is not without merit.

As it seems to me, the majority of the court stumble when they undertake to make a distinction between the rights of an abutting property owner when the public has only an easement in a highway or street, and when the title to such highway or street is a fee simple in the public.    In cases like the one at bar, where the private rights of the abutting property owner have been invaded, where his property has been destroyed, and where, though it were not destroyed, his right of ingress and egress has been destroyed, his recovery must be the same whether the public holds only an easement in the highway or street, or whether the public is vested with the fee simple.

In the case of *Adams* v. *Chicago, etc., R. Co.* (1888), 39 Minn. 286, 39 N. W. 629, 1 L. R. A. 493, 12 Am. St. 644, it was held that it makes no difference that the fee is not in the abutter, he has, independent of the owner-

ship of the soil, an interest in the street appurtenant to his lot. That although the fee of the street be in the state or municipality, the owner of an abutting lot has, as appurtenant to his lot, an interest or easement in the street in front of it, which is entirely distinct from the interest of the public. The authority quotes with approval from *Grand Rapids, etc., R. Co.* v. *Heisel* (1878), 38 Mich. 62, 31 Am. Rep. 306 as follows: "Every lot owner has 'a peculiar interest in the adjacent street which neither the local nor the general public can pretend to claim; a private right in the nature of an incorporeal hereditament legally attached to his contiguous ground; an incidental title to certain facilities and franchises,' which is in the nature of property, and which can no more be appropriated against his will than any tangible property of which he may be the owner." After directing attention to the elevated railroad cases and citing *Story* v. *N. Y. Elevated R. Co.* (1882), 90 N. Y. 122, 43 Am. St. 146, and *Lahr* v. *Metropolitan Elevated R. Co.* (1887), 104 N. Y. 268, 10 N. E. 528, the court says: "We think that in those cases the doctrine is unqualifiedly established that * * * no matter who may own the fee, an abutting owner necessarily enjoys certain advantages from the existence of an open street adjoining his property, which belong to him by reason of its location, and are not enjoyed by the general public, such as the right of free access to his premises, and the free admission and circulation of light and air to and through his property." In the Lahr case cited above, the spirit of the court in dealing with the question may be better understood when we note that it held that if the rights of an abutting owner may be taken from him without his consent, or without compensation, "a system has been inaugurated which resembles more nearly legalized robbery, than any other form of acquiring property."

In *Theobold* v. *L., N. O. & T. R. Co.* (1889), 66 Miss. 279, 288, 6 South. 230, 231, 4 L. R. A. 735, 14 Am. St. 564, the court says: "Whether the abutting owner has simply an easement in the street, while the fee is in the public or in some other owner, or whether he has both the fee and an easement, he is equally entitled to require, that nothing shall be done in derogation of his rights."

In the case of *Street Railway* v. *Cumminsville* (1863), 14 Ohio St. 541, which involved the rights of abutting property owners in and to the adjacent street, the court says: "For this purpose, there is no occasion to distinguish between lands acquired for ordinary highways, leaving the fee in the owner, and lands dedicated for streets in towns, where the fee vests in the municipal corporation, in trust to answer the purposes of the use. In either case, the interest acquired and used by the public at large, is an easement, of a definite character and held for the attainment of known objects; and in either case, 'distinct from the right of the public to the use of the street, is the right and interest of the owners of lots adjacent.'" To the same effect, see *Railway Co.* v. *Lawrence* (1882), 38 Ohio St. 41, 43 Am. St. 419; *Crawford* v. *Village of Delaware* (1857), 7 Ohio St. 459, 469. But we do not need to look further, for our own state settled this question long ago in the case of *Haynes* v. *Thomas* (1855), 7 Ind. 38. The dedication there involved was under the act of 1818, in the Revision of 1831 p. 530, which provided that all donations or grants marked and noted as such on the plat of the town, wherein such donations or grants are made, shall be considered to all intents and purposes as general warranties, and it was held in that case that the right to use the street in a town, adjoining a lot abutting upon it, is as much property as the lot itself, and the legislature has as little power to take one away as

the other, and that whether the act of dedication transfers the fee from the donor to the public, is not a material inquiry.

Another principle is just as effective to preserve appellants' rights as the one which we have just discussed. It will be observed from the statement of facts in the majority opinion that appellee was the owner of twenty-two and one-half feet in front of appellants' lots, and that it sold this tract of land to appellants' remote grantor. It will hardly be denied, whatever may be the nature of the title that appellee holds in the highway in front of appellants' property, that it had fully dedicated the same to the public for the use of a highway, and that such dedication preceded the time of the conveyance of the twenty-two and one-half feet to appellants' remote grantor. It was held in *Messick* v. *Kincaid* (1912), 147 Ky. 680, 145 S. W. 375, that a purchaser of lots on the faith of the vendor's dedication of the street in front of them could sue to prevent the vendor from obstructing the street. And again, in *Mayor & Council of Macon* v. *Franklin* (1852), 12 Ga. 239, it was held that where a municipal corporation makes a valid dedication of land belonging to it, the dedication not only enures to the benefit of those who were purchasers before or at the time when the dedication was made, but, when made, it is for the benefit as well of all who become citizens subsequently, so that the latter may resist its revocation by such corporation, and it is an appropriation for public use forever, and all who may become members of that public are its beneficiaries, and have rights in the use which the law will protect.

In *Cook* v. *City of Burlington* (1870), 30 Iowa 94, 6 Am. St. 649, it was held that where Congress dedicated lands to public use, subsequent purchasers of lots abutting thereon possessed such an interest therein as to be

entitled to an injunction against an absolute conveyance of the property for private purposes by the holder of the legal title.

In harmony with this principle, it has been held that by deeding lots with reference to a plan recorded by its predecessor, defendant represented that the ways shown by the plan existed, and the purchaser can enjoin incumbrance of such ways to his prejudice. *Douglass* v. *Belknap, etc., Co.* (1911), 76 N. H. 254, 81 Atl. 1086, 37 L. R. A. (N. S.) 953.

It would be a strange doctrine indeed that would permit a grantor, whether a public or a private holder, to convey real estate abutting upon a highway, which location must of necessity enhance its value, by giving to its grantee the means of ingress and egress to his property, and thereafter the same grantor could by his own act ruthlessly destroy such ingress and egress without compensation to the grantee.

Appellant's property, of the value aforesaid, consisted of lots abutting on the abutment and levee or approach to the bridge, which was a highway, and public street in the town of West Lafayette, and which lots had been raised to the grade of such highway and street and valuable buildings erected thereon. There was nothing at the time of such erection, or thereafter until the unprecedented flood in March, 1913, that suggested that there would be any change in such abutment and levee. After such unprecedented flood the appellee concluded to widen the throat of the bridge over the river, and to that end, by contract, caused the abutment, and the levee in front of appellants' property to be removed. Appellee caused an excavation to a depth of fifty feet to be made immediately in front of and next to appellants' property, thereby leaving appellants' lot without support, and the soil and dirt thereof caved into the excavation. From a new abutment, which was constructed

170 feet further west, a new bridge was built over the excavation made, which bridge instead of being of the width of eighty feet, which was the width of the old levee which constituted the highway, was but fifty-six feet wide, thereby leaving an air space of twelve feet between the bridge and appellants' lots. The bridge was nine feet higher than the old levee with a banister four feet high on each side made of concrete and stone. It will be seen from this that appellants' lots, from which there was free ingress and egress before the new bridge was constructed, was thereafter absolutely cut off from any ingress or egress. The waters of the river, having free access under said new bridge, are turned against and over appellants' lots carrying thereon vast quantities of sand, earth, and debris, and carrying away the soil. We cannot imagine a more complete destruction of property rights. Who desires the task of going into the presence of this wreck and ruin, which under the opinion of the majority of the court might as well have been appellants' castle, their home, as their place of business, and, with the majority opinion as a text, of undertaking to demonstrate to appellants the beauties of American constitutions in their protection of the private rights of the citizen, as contrasted with the "rights of the king" of former days?

Section 21, Art. 1, of the Constitution of Indiana, being §66 Burns 1914, provides that no man's property shall be taken without just compensation. This provision is for the protection of the citizen and should have a liberal construction to that end. The Supreme Court of this state, in the case of *School Town of Andrews* v. *Heiney* (1912), 178 Ind. 1, 98 N. E. 628, opinion by Myers, J., has defined a taking of property within the constitutional provisions to be "an actual interference with or disturbance of property rights, which are not merely consequential, or incidental injuries to property,

or property rights, as distinguished from prohibition of use, or enjoyment, or destruction of interests in property." After citing authorities, the Supreme Court says: "It seems axiomatic in that, if property may not be physically taken without just compensation under due process of law, one cannot be deprived of its use or enjoyment for that is in effect a taking." Appellants, as owners of the abutting lots, had a peculiar and distinct interest in the easement of the highway or street in front thereof, which is distinguished from the interest of the general public, in that it becomes an interest adhering to the contiguous grounds and buildings thereon, affording convenient access for their use. This interest in the street, because of appellants' lots and buildings adjusted thereto as the street then existed, was a valuable right recognized by the law, and which cannot be taken without just compensation. *Town of Rensselaer* v. *Leopold* (1886), 106 Ind. 29, 5 N. E. 761.

In *Haslett* v. *New Albany, etc., R. Co.* (1893), 7 Ind. App. 603, 34 N. E. 845, it was held that the owner of a lot abutting on a street in a town or city has a distinct and separate interest from the public in the easement of the street, in that his rights and interests are legally inherent in the lot itself, affording him the free and convenient use thereof. This property right cannot be taken from him or even impaired, without compensation. Numerous authorities are cited.

In *Protzman* v. *Indianapolis, etc., R. Co.* (1857), 9 Ind. 467, 68 Am. Dec. 650, it was held that the right to use and enjoy the street is an appurtenance to the lot abutting upon the street, and any injury to the appurtenance is an injury to the whole property. The court citing, *Haynes* v. *Thomas, supra,* says: "It is decided that the right of the owner of a town lot abutting upon the street, to use the street, is as much property as the lot itself; that it is appurtenant to the lot, and is protected

by the constitution. It cannot be taken away without compensation. The lot and street adjoining, then, as to the owner of the former, would seem to constitute but one piece of property, and an injury to the latter would seem to be an injury to the former—to the whole property."

In *O'Brien* v. *Central Iron, etc., Co.* (1902), 158 Ind. 218, 63 N. E. 302, 57 L. R. A. 508, 92 Am. St. 305, the action was for damages for the obstruction of a street. The lower court had sustained a demurrer to the complaint for damages, and the Supreme Court, reversing the lower court, says: "The abutter * * * has an individual property right, appendant to his premises, in that part of the street which is necessary to free and convenient egress and ingress to his property. That this latter right is private and personal and unshared by the community, and cannot be taken away, or materially interfered with, without the wrong-doer being answerable in damages, had been many times declared by this court." Many authorities are cited. It is not contended that appellee was a wrong-doer, but the principle as to compensation is the same. The street or highway had been just as effectually obstructed, and appellants' egress and ingress just as effectually cut off, as if there had been a vacation of the street. There was a complete abandonment of the highway so far as appellants were concerned, and this, together with the destruction of their property, amounted to a taking of the same, under the authorities above cited.

In *Indianapolis, etc., Co.* v. *Smith* (1876), 52 Ind. 428, it was held that the railroad company is liable in damages for injury occasioned by reason of the construction of a raised railroad track along the street of the city, thereby causing the water from the rains and freshets to flow upon adjacent real estate; and also for injury occasioned by reason of the construction of an

embankment on a street approaching a street crossing of said track, in front of a lot in a city occupied by a dwelling house, thereby rendering the approach to the lot in front of such street impossible for carriages, wagons and vehicles and inconvenient for foot passengers.

The case of *Dantzer* v. *Indianapolis, etc., R. Co.* (1894), 141 Ind. 604, 39 N. E. 223, 34 L. R. A. 769, 50 Am. St. 343, is in harmony with the principle here announced, though deciding against the property owner who had sued for injunction. It is there stated that: "The property rights of the lot owner, as against the public, are coterminous with the lines of his lot, but that property right may be obstructed and its uses defeated by cutting off ingress and egress to and from such lines from points upon the street beyond such lines. In such case there should be and is a remedy." The relief there sought was by injunction, but the court held that there was a remedy at law. Certainly, then, there should be a remedy for cutting off egress and ingress immediately at such property lines.

In the case of *Oler* v. *Pittsburgh, etc., R. Co.* (1916), 184 Ind. 431, 111 N. E. 618, citing with approval *Haynes* v. *Thomas, supra,* it was held that the private right of egress and ingress of an abutter was one which the legislature itself could not take away, and with it take away the right to compensation for the deprivation.

Other authorities discuss the principle, many of which are cited from the above authorities. I deem it sufficient in reaching the conclusion as to this principle to which I must come, to consider only Indiana authorities. But the principle as declared in Indiana is in harmony with the great weight of authorities in the other states.

In 20 C. J. §156, the general principle is stated thus: "While the owner of a lot abutting on a public street has

the same right to the use of the street that rests in the public, he at the same time has other rights which are special and peculiar to him, and the right of ingress and egress is one of them.   The right of access is appurtenant to his lot and is private property; to destroy that right is to damage his property, and when this is done for the public good, just compensation must be made therefor.   When, therefore, a person owns a lot which abuts upon a portion of a street which is vacated, so that access to the lot is shut off, he is entitled to compensation."   Many authorities are cited sustaining the foregoing principle.

In *Hooker* v. *New Haven and Northampton Co.* (1843), 14 Conn. 146, 15 Conn. 312, 36 Am. Dec. 477, it is held that if a public work is of a character necessarily to disturb the occupation and enjoyment of his estate, by one whose land is not taken, he may have an action on the case for such injury notwithstanding the statute makes no provision.

In *Reardon* v. *San Francisco* (1885), 66 Cal. 492, 6 Pac. 317, 56 Am. St. 109, it was held that the word "damaged" embraces more than physical invasions of property.   It is not restricted to cases where the owner is entitled to recover as for a tort at common law.   The language is intended to cover all cases even those in which, in the proper execution of a public work or purpose, the right or property of any person in a pecuniary way may be injuriously affected.

It will be observed that many cases from the Supreme Court of the State of Illinois are cited and discussed in the majority opinion.   We do not find it necessary to review each of these cases, but only to cite from that state cases which are directly in point with the case at bar.

In *Rigney* v. *City of Chicago* (1881), 102 Ill. 64, it was held that where a city constructed a viaduct or

bridge on a public street, near its intersection with another street, thereby cutting off access to the first named street from the plaintiff's house and lot, over and along the street intersected, except the means of a pair of stairs whereby the plaintiff's premises fronting on the latter street and near the obstruction were permanently damaged and depreciated in value by reason of being deprived of such access, it was held that the city was liable to the plaintiff in damages for the injury. Dickey, C. J., in a concurring opinion says: "It is not every change in grade made in a street which may in effect impair the value of the lot in its vicinity, which is a violation of a right of a proprietor thereof. Such changes in a street as it may reasonably be supposed might be made for the improvement of a public highway, the purchaser of a lot upon the street must be assumed to have consented to when the purchase was made. The making of such changes is not therefore, an invasion of his right in that regard. But it cannot be assumed that the purchaser gave his assent to sudden and extraordinary changes in the grade of a public highway such as it is unreasonable to suppose the purchaser at the time of the original sale, or when he made improvements would naturally anticipate might be required for the improvement of the public highway. To make such changes is an invasion of the right of the lot owner, and is the exercise of a power under this right in the nature of an easement spoken of, and if the value of the property and the property is really impaired thereby, in such case the injury of the lot is the damage which under our constitution must be compensated."

In *Nevins* v. *City of Peoria* (1866), 41 Ill. 502, 89 Am. Dec. 392, it is held that: "And if it should become necessary for the interest of the public, in the process of grading or drainage of the streets, that the lot of an individual shall be rendered unfit for occupancy, either

wholly or in part, the public should pay for it to the
extent to which it deprives the owner of its legitimate
use.   The constitutional provision that private property
shall not be taken for public use without due compen-
sation, applies as well to secure the payment for prop-
erty partially taken for the use or convenience of a
street, as when wholly taken and converted into a street.
The question of the degree to which the property is
taken, makes no difference in the application of the
principle.   Private rights are never to be sacrificed to
public convenience or necessity, without full compensa-
tion.   And it appears, that, for injuries done to the
property of an individual in the process of grading and
drainage of a street,   *   *   *,   he may have his ac-
tion on the case against the city, and it must respond
in damages."   See, also, *City of Pekin* v. *Brereton*
(1873), 67 Ill. 477, 16 Am. Rep. 629; *City of Pekin* v.
*Winkel* (1875), 77 Ill. 56; *City of Elgin* v. *Eaton* (1876),
83 Ill. 535, 25 Am. Rep. 412; *Stack* v. *City of East St.
Louis* (1877), 85 Ill. 377, 28 Am. Rep. 619.

In the case of *Chicago* v. *Taylor* (1888), 125 U. S.
161, 31 L. Ed. 638, the court cited with approval the
case of *Rigney* v. *City of Chicago, supra,* and held that
under the constitution of that state it is not necessary
that the damage should be caused by trespass or an ac-
tual physical invasion of the owner's real estate, if the
construction and operation of the railroad or other im-
provement is the cause of the damage, though conse-
quentially.

The majority opinion relies in part for the conclusion
which it has reached upon the case of *Bradbury* v.
*Walton* (1893), 94 Ky. 163, 21 S. W. 869.   This case
involved the question of the vacation of a county public
highway that was lateral to a turnpike and by the stat-
ute of that state was discontinued.   We do not need to
discuss the merits of this case for an examination dis-

closes that it is not in point. It must be kept in mind that in the case at bar we are dealing with lots that were abutting upon a public highway that was a street. In the Bradbury case from which the majority opinion has quoted so extensively we quote this principle of law: "Streets of a town or city are acquired by grant with the implied right of ingress and egress to the abutting lot owner, the grantor, or the party making the dedica-tion, saying to the owners of the lots: 'This right of ingress and egress you shall have.'" This principle was early declared by the courts of Kentucky to be the fundamental law of that commonwealth.

In the case of *Transylvania University* v. *City of Lexington* (1842), 3 B. Munroe 25, the court on p. 27, says: "Every owner of ground on any street in Lexington, has the right, as inviolable as it is indisputable, to the common and unobstructed use of the contiguous highway, so far as it may be necessary for affording him certain incidental easements and services, and a convenient outlet to other streets. And of this right, the Legislature cannot deprive him, without his consent; or a just compensation in money. The extent of this appurtenant right, depending on circumstances, may not, in the particular case, be easily definable with mathematical precision. So far as it exists, however, it partakes of the character of private property, and is therefore protected by the fundamental law, as property." This principle is sustained in the case of *Gargan* v. *Louisville, etc., R. Co.* (1889), 89 Ky. 212, 12 S. W. 259, 6 L. R. A. 340, where it was held that when the closing up of one end of a street or alley leaves to the owner of property bordering upon the street or alley no convenient or reasonable means of access to other streets to which he has theretofore had convenient access, he is entitled to his action for damages, and that the city can-not either for its own use, or for the use of a private

corporation appropriate the street to the injury of the property holder without making just compensation. The Transylvania case above quoted is cited with approval in the case of *Illinois, etc., R. Co.* v. *Elliott* (1908), 129 Ky. 121, 128, and *Henderson* v. *City of Lexington* (1909), 132 Ky. 390, 409, 111 S. W. 318, 22 L. R. A. (N. S.) 20. On the principle here involved the heart of the Kentucky court is right, and is in harmony with the principle announced in 1 Elliott, Roads and Streets (3d ed.) §488, where the author says: "Individual owners of abutting property have a private interest in the highway distinct from the public, of which they cannot be deprived without compensation. Of this they cannot be deprived by any use that destroys the character of the road or street as a way for free and unobstructed passage." To sustain this principle so stated the author cites *Cummins* v. *City of Seymour* (1881), 79 Ind. 491, where the court on p. 501, says: "It is equally well settled that where one does sustain a special injury, different in character from that sustained by the public, he may have his action. *Ross* v. *Thompson*, 78 Ind. 90."

In the case of *Pumpelly* v. *Green Bay Company* (1871), 13 Wall. 166, 20 L. Ed. 557, from the Supreme Court of the United States, where the court in discussing a like constitutional provision of the State of Wisconsin to the one here involved, with interpretation that protects the citizen's private rights, says: "It would be a very curious and unsatisfactory result, if in construing a provision of constitutional law, always understood to have been adopted for protection and security to the rights of the individual as against the government, and which has received the commendation of jurists, statesmen, and commentators as placing the just principles of the common law on that subject beyond

the power of ordinary legislation to change or control them, it shall be held that if the government refrain from the absolute conversion of real property to the uses of the public it can destroy its value entirely, can inflict irreparable, and permanent injury to any extent, can, in effect, subject it to total destruction without making any compensation, because, in the narrowest sense of that word, it is not *taken* for the public use. Such a construction would pervert the constitutional provision into a restriction upon the rights of the citizen, as those rights stood at common law, instead of the government, and make it an authority for invasion of private right under the pretext of the public good, which had no warrant in the laws or practices of our ancestors."

It is argued that the action of appellee in widening the throat of the bridge was an exercise of the police power, and that therefore there can be no recovery for the loss sustained, in other words, that such an injury is *damnum absque injuria;* but this argument cannot prevail.

In 20 C. J. p. 689, §152, it is stated as a general principle that: "Any occupation or use of a street or highway which obstructs the same so as to destroy or materially impair the easements of an abutting owner is a taking of, or injury to, private property entitling such owner to compensation, although such occupation or use is authorized by the legislature or the municipal authorities, or the obstruction, is erected by the city in the exercise of its police power." This principle is there sustained by many authorities.

Again, it is stated in 1 Dillon, Municipal Corporations (5th ed.) §302, as follows: "All-embracing and penetrating as the police power of the State is, and of necessity must be, *it is nevertheless subject, like all other legislative powers, to the paramount authority of the*

*State and Federal Constitutions.* A right conferred or protected by the Constitution cannot be overthrown or impaired by any authority derived from the police power."

The principle is illustrated by the case of *City of Chicago* v. *Le Moyne* (1902), 119 Fed. 662, 56 C. C. A. 278, which was a case involving the construction of a viaduct in a street, and the court held that "The contention that the construction of the viaduct was in the legitimate exercise of the police power of the city, and that any damage to property thereby occasioned is damnum absque injuria, notwithstanding the constitutional provision that 'private property shall not be taken or damaged for public use without just compensation,' cannot be sustained. The question is set at rest by the recent decision of the supreme court of Illinois, in *City of Chicago* v. *Jackson* (as yet unreported officially), 63 N. E. 1013, holding, with Judge Dillon, that 'a right conferred or protected by the constitution cannot be overthrown or impaired by any authority derived from the police power.'"

*In re Cheesebrough* (1879), 78 N. Y. 232, 237, it is said that: "The interference with property under the police power may be justified in most cases by the application of the principle that one shall so use his own property as not to injure or endanger the property or health, or disturb unnecessarily the peace and comfort of his neighbor. But there never can be any necessity under the police power or the law of necessity to permanently appropriate land to the public use without compensation."

When I consider that along with the destruction of the means of ingress and egress there was in this case a destruction of the property from which there had been an ingress and egress, thereby totally annihilating appellants' property rights, I must say that it would be

strange reasoning indeed that would undertake to justify such an invasion without compensation by the government, of the private rights of one of its citizens, even though such an invasion be in the exercise of police power.

I have already quoted from *Pumpelly* v. *Green Bay, etc., Co., supra,* but before closing this dissenting opinion I must again advert to that opinion. On p. 180, Miller, C. J., says: "We are not unaware of the numerous cases in the State courts in which the doctrine has been successfully invoked that for a consequential injury to the property of the individual arising from the prosecution of improvements of roads, streets, rivers, and other highways, for the public good, there is no redress; and we do not deny that the principle is a sound one, in its proper application, to many injuries to property so originating. And when, in the exercise of our duties here, we shall be called upon to construe other State constitutions, we shall not be unmindful of the weight due to the decisions of the courts of those States. But we are of opinion that the decisions referred to have gone to the uttermost limit of sound judicial construction in favor of this principle, and, in some cases, beyond it, and that it remains true that where real estate is actually invaded by superinduced additions of water, earth, sand, or other material, or by having any artificial structure placed on it, so as to effectually destroy or impair its usefulness, it is a taking, within the meaning of the Constitution, and that this proposition is not in conflict with the weight of judicial authority in this country, and certainly not with sound principle."

I am pleased to declare myself in harmony with this clear expression of judicial acumen, and for the purposes of this opinion to emphasize that part of it that opines that the decisions holding no redress, have gone

to the uttermost limit of sound judicial construction in favor of the principle, and to assert that the majority opinion in this case is among the cases that have gone beyond it.

These are troublous times, when enemies from without and from within, taking advantage of the turmoil of war and its aftermath, would strike down our American constitutions, both federal and state, days so ominous that those who fought to save our country from the hand of the aggressor and to vindicate its honor, have deemed it imperative that they organize to preach Americanism and the supremacy of constitutional law. But they must be hindered in their patriotic efforts, if, while they proclaim American liberty and rights, the courts by judicial misinterpretation of constitutional rights, take from the private citizen his property, without due process and compensation—in this case of the value of $12,000, and for aught that appears, their all. With equal plausibility, the citizen's liberty or life may be taken.

Under the facts in this case, and in view of the plain provisions of the Constitution, I must stand for the constitutional rights of the private citizen and I, therefore, dissent from the majority opinion.

The demurrers to the respective paragraphs of complaint should be overruled.